**In re DUBLIN PROPERTIES, a Limited Partnership, Debtor.**

**FRANKFORD TRUST COMPANY, Plaintiff,**

v.

**Marvin ALLANOFF, et al., Defendants.**

**FOUNDERS FEDERAL SAVINGS & LOAN ASSOCIATION, Now Known as Olney Federal Savings & Loan Association, Plaintiff,**

v.

**Marvin ALLANOFF, et al., Defendants.**

**Bankruptcy No. 80–03020G.
Adv. No. 82–0603G.**

United States Bankruptcy Court,
E. D. Pennsylvania.

June 9, 1982.

---

John Francis Gough, Toll, Ebby & Gough, Philadelphia, Pa., for plaintiff, Frankford Trust Co.

Rush T. Haines, II, Fred A. Greenberg, Drinker, Biddle & Reath, Philadelphia, Pa., for plaintiff, Founders Federal Savings & Loan Ass'n, now known as Olney Federal Savings & Loan Ass'n.

Marvin Allanoff, Dresher, Pa., defendant, pro se.

Marvin Katz, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for defendants, Gary Gordon, Vivian Gordon, Eugene Rubin, Michelle Rubin and Caroline Rubin.

Nathan B. Feinstein, Wilhelm Knauer, Jr., Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for debtor, Dublin Properties, a Limited Partnership.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issues presented herein are (1) whether two former general partners of the debtor should be held in contempt for filing petitions in the state court to have judg-

ments against them which are property of the debtor and the estate marked satisfied or opened, (2) whether the state court proceedings in which the two general partners filed those petitions (which were removed to this court) should be remanded to the state court and (3) whether we should reconsider our order authorizing the debtor to hire special counsel to prosecute actions it has against the two general partners. We conclude that (1) the partners should be held in contempt for their actions which were in knowing violation of the automatic stay provisions of the Bankruptcy Code ("the Code"), (2) the state court proceedings should not be remanded because they involve property of the estate and (3) our order authorizing the debtor to employ special counsel will be reaffirmed.

The facts of the instant case are as follows:[1] On November 17, 1980, Dublin Properties, a Limited Partnership, ("the debtor") filed a petition for a reorganization under chapter 11 of the Code. Until January 8, 1980, the general partners of the debtor were Marvin Allanoff, Eugene Rubin and Gary Gordon. On that date, Gordon and Rubin agreed to relinquish all management control of the debtor to Allanoff.

On January 12, 1981, Frankford Trust Company and Olney Federal Savings and Loan Association ("the banks") filed separate complaints against the debtor seeking relief from the automatic stay to permit them to continue with mortgage foreclosure proceedings against the debtor's sole asset, a subdivision of partially completed townhouses known as the Tannerie Wood Subdivision.[2] Those complaints were consolidated for the purpose of trial and, after extensive hearings, a consent judgment was entered by us on July 31, 1981, which settled those adversary proceedings. As part of that consent judgment, the banks agreed "to assign and convey to the Debtor's Estate all of [the banks'] right and interest, if any" in certain guaranties and judgments held by the banks against Gordon and Ru-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. Those complaints had adversary numbers 81–0026 and 81–0027.

bin and their wives.[3] By that consent judgment, the banks also agreed to release the debtor and Allanoff and his wife from any liability, other than that stated in the consent judgment, on the debts owed to the banks.[4]

Among the rights which were assigned to the debtor by the banks were judgments which had been entered by the banks in the Court of Common Pleas of Montgomery County, Pennsylvania, against Gordon and Rubin. Both Gordon and Rubin were aware of the terms of the consent judgment since their attorney had appeared at the hearing held on the approval thereof and had objected to the terms of that consent judgment.

Thereafter, Gordon and Rubin demanded that the judgments held by the banks be marked satisfied because, they asserted, the releases of the debtor and Allanoff by the banks precluded the banks from asserting any claim against Gordon and Rubin as guarantors of the debtor. When the banks and debtor refused to have the judgments marked satisfied, Gordon and Rubin filed petitions in the Montgomery County court to compel satisfaction of those judgments or, in the alternative, to open the judgments.

As a result of the actions of Gordon and Rubin, the debtor filed in this court (1) an application for the issuance of an order to show cause why Gordon and Rubin should not be held in contempt for violating the automatic stay provisions of the Code and (2) an application to remove the state court proceedings begun by Gordon and Rubin to the bankruptcy court. In response, Gordon and Rubin filed (1) an application to strike the contempt proceedings, (2) a motion to remand their proceedings to the state court

and (3) an application for reconsideration of an earlier order by us authorizing the debtor to hire special counsel to prosecute any actions which the debtor may have against Gordon and Rubin.

## I. THE DEBTOR'S MOTION FOR CONTEMPT.

■ In order for a person to be held in contempt of court, that person must have committed a knowing violation of a specific and definite order of the court.[5]

■ The debtor asserts that Gordon and Rubin should be held in contempt because their action in filing the petitions in the state court was an action against property (the judgments) in which the debtor and its estate had at least an equitable interest and was, consequently, a knowing violation of the automatic stay provisions of the Code.[6] In support of its argument, the debtor notes that § 541(a)(7) provides that "property of the estate" includes "[a]ny interest in property that the estate acquires after the commencement of the case" and that § 362(a)(3) provides for an automatic stay of "any act to obtain possession of property of the estate or of property from the estate." Further, the debtor states that Gordon and Rubin knew of the applicability of the stay to the judgments in question because they appeared, with their attorneys, at the hearing on the approval of the consent judgment.

In response, Gordon and Rubin assert that § 362(a)(3) only prohibits an attempted seizure of property from the estate and that their petitions to compel satisfaction of the judgments are not an attempt to obtain possession of any property of the estate.

---

3. *See* Consent Judgment, ¶'s 7 and 15, dated July 31, 1981.

4. *Id.* at ¶'s 4, 5, 6, 10, 13(a) and 14.

5. *See Fidelity Mortgage Investors v. Camilia Builders, Inc.,* 550 F.2d 47 (2d Cir. 1976) *cert. denied* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977), *citing In re Rubin,* 378 F.2d 104 (3d Cir. 1967). *See also, United States v. Christie Industries, Inc.,* 465 F.2d 1002 (3d Cir. 1972).

6. It has been held that the automatic stay provisions of the Code and the Bankruptcy Act are specific and definite orders which, if knowingly violated, are enforceable by the court's contempt power. *See, e.g., Fidelity Mortgage Investors v. Camilia Builders, Inc.,* 550 F.2d 47, 51 (2d Cir. 1976) *cert. denied* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *In re Abt,* 2 B.R. 323, 5 B.C.D. 1237 (Bkrtcy.E.D.Pa.1980).

Rather Gordon and Rubin state that their petitions in the state court are merely to obtain a determination that the judgments should be satisfied because the banks released the debtor and Allanoff thereby extinguishing the underlying debt.

While we agree that the action taken by Gordon and Rubin is, technically, not an action to obtain possession of property of the estate (i.e., the judgments), it *is* an action to deprive the estate of that property. The petitions filed by Gordon and Rubin request the state court to require the banks to mark, as satisfied, the judgments which the banks had previously agreed to assign to the estate. Such an action, if successful, would not only put the banks in the unenviable position of choosing between conflicting orders of two different courts but would also deprive the estate of whatever interest it may have in the judgments without affording it the opportunity to appear and defend that interest.[7] Thus, we conclude that the action of Gordon and Rubin is a clear violation of the spirit, if not the exact language, of the automatic stay provisions of the Code. Furthermore, their action may interfere with the administration of the estate by possibly creating conflicting decisions in this court and the state court. As such, we conclude that the action taken by Gordon and Rubin is subject to our contempt power.[8]

Gordon and Rubin assert, however, that their actions are not contemptuous because they were not in violation of an explicit order of the court or provision of the Code of which they had knowledge. They cite authority for the proposition that contempt proceedings should not be used where there is a good faith belief that the general language of an order or provision did not prohibit the actions taken.[9] While we agree with that general statement, we conclude that it is inapplicable to the case at bench. We find it inconceivable to imagine that anyone familiar with the Bankruptcy Code could, in good faith, believe that the automatic stay provisions of the Code do not prohibit a person from taking action in another court to eliminate a property interest held by the estate. Therefore, we conclude that the action taken by Gordon and Rubin in filing petitions in the state court to compel the satisfaction of judgments in which the estate had an interest were actions in contempt of this court.[10]

## II. REMOVAL VS. REMAND OF THE STATE COURT PROCEEDINGS.

Section 1478 of Title 28 provides for the removal of actions to the bankruptcy courts and states, in relevant part:

(a) A party may remove any claim or cause of action in a civil action ... to the bankruptcy court for the district where such civil action is pending, if the bankruptcy courts have jurisdiction over such claim or cause of action.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order under this subsection remanding a claim or cause of action, or a decision not so remanding, is not reviewable by appeal or otherwise.

---

7. Although it is true that the debtor might have been able to intervene in the state court action or might have been named as a third party, failure of Gordon and Rubin to name the debtor in that suit was certainly not designed to provide the debtor and the estate with an opportunity to protect their interests in the judgments in question.

8. *See also*, 11 U.S.C. § 105(a).

9. *See, e.g., In re Rubin*, 378 F.2d 104 (3d Cir. 1967); *In re Union Nat'l Bank & Trust Co.*, 287 F.Supp. 431 (E.D.Pa.1968).

10. Nowhere in our opinion do we mean to decide the issue raised by Gordon and Rubin in their petitions in the state court (namely, whether the judgments are enforceable now that the banks have released the debtor and Allanoff from any liability on the debt). That issue is to be determined later. However, we do hold here that the action of Gordon and Rubin in the state court to eliminate the interest of the estate in those judgments is in contempt of § 362 of the Code.

Removal under § 1478 is automatic but the bankruptcy court has discretion to remand the case or to abstain from hearing it.[11]

■ In the instant case, the debtor has effected the removal to this court of the proceedings begun by Gordon and Rubin in the state court to compel the satisfaction of the judgments or, in the alternative, to reopen those judgments. Gordon and Rubin cite many reasons why they contend that we should remand or abstain from trying those proceedings. First, Gordon and Rubin assert that only a party to an action may remove it to the bankruptcy court and the debtor was not a party to the state court actions. While the debtor admits that it was not a party to those actions, it asserts that it, rather than the banks, is the real party in interest in those suits because it holds legal or equitable interest in the judgments involved.[12]

We find it unnecessary to determine that the debtor is entitled to remove the state court proceedings solely on the basis asserted by it—i.e., that it is the real party in interest in those actions—because we find that there are other reasons to permit the removal. First, both banks, who *are* parties to the state court proceedings, have stated that they are in favor of the removal of those proceedings to the bankruptcy court. Second, since the debtor asserts that it is the real party in interest in the state court proceedings, as holder of a legal or equitable interest in the judgments, the debtor could have moved to intervene or to be substituted as a party in the state court proceedings. To hold that the debtor could not remove those proceedings to this court because it was not technically a party to

those proceedings would be to exalt form over substance.

■ The second ground advanced by Gordon and Rubin to support their motion for remand is that this court does not have jurisdiction over the removed proceedings. Section 1471 of Title 28 outlines the jurisdiction of the bankruptcy courts and provides, in relevant part:

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

We conclude that, in the instant case, the state court proceedings in question clearly are "civil proceedings ... related to" the debtor's chapter 11 under the Bankruptcy Code. The state court proceedings involve a property interest of the debtor's estate and, therefore, are related to the administration of the debtor's estate and are within our jurisdiction.[13]

■ While we conclude that we have jurisdiction over the state court proceedings at issue herein, we do not agree with the debtor's assertion that that jurisdiction is exclusive. As pointed out by Gordon and Rubin, the section providing for exclusive jurisdiction in the bankruptcy court states:

---

11. *See, e.g.,* 28 U.S.C. § 1471(d) which provides:

   (d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

12. The debtor obtained an equitable interest in those judgments by the consent judgment. Since that time, the debtor has obtained legal

interest in the Frankford judgments but has yet to obtain such a legal interest in the Olney judgment.

13. The case cited by Gordon and Rubin for the proposition that the bankruptcy court does not have jurisdiction over a state court action against guarantors of a bankrupt corporation's obligations was a case under the Bankruptcy *Act* under which the bankruptcy courts had considerably less of a jurisdictional reach than under the Code. *See, e.g., In re Magnus Harmonica Corp.,* 233 F.2d 803 (3d Cir. 1956).

(e) The bankruptcy court in which a case under title 11 is commenced shall have *exclusive jurisdiction of all of the property,* wherever located, *of the debtor, as of the commencement of such case.*

28 U.S.C. § 1471(e) (emphasis added). In this case, the property in question (i.e., the judgments) was not property of the debtor as of the commencement of the case under chapter 11. Rather, the debtor and estate did not acquire any interest in that property until the entry of the consent judgment, well after the commencement of the chapter 11 case. Thus, we conclude that we have concurrent, but not exclusive, jurisdiction.

■ The third argument raised by Gordon and Rubin is that the debtor's attempted removal of the state court proceedings is invalid because it was untimely filed. Rule 7004(a)(2) of the Interim Bankruptcy Rules provides that, if the application for removal is filed by the defendant, that application must be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." Rule 7004(a)(3) of the Interim Bankruptcy Rules provides further that "if the civil action or proceeding stated by the initial pleading is not within the jurisdiction of the bankruptcy court when initiated, an application for removal may be filed by a party within 30 days after the order for relief in the case under the Bankruptcy Code."

Gordon and Rubin assert that Rule 7004(a)(3) is applicable to the instant case which, taken literally, requires that an application for removal be filed within 30 days of the debtor's filing of a petition under chapter 11 of the Code on November 17, 1980. However, Gordon and Rubin concede that the debtor was unable to take such action at that time because it had no interest in the judgments or the state court proceedings until September 23, 1981, when the banks became obligated, by the terms of the consent judgment, to transfer their interests in the judgments to the debtor. Consequently, Gordon and Rubin assert that "the thirty-day period for removal would, therefore, equitably begin to run when [the debtor's] interest in the proceedings arose."[14] If we were to follow the reasoning of Gordon and Rubin, we would conclude that the 30 day period began to run, not on the date the banks became obligated to transfer their interests to the debtor, but on the date when those interests were actually transferred because the latter is the date on which the debtor's interest in the state court proceedings arose.

However, we conclude that the instant case is governed by Rule 7004(a)(2) rather than Rule 7004(a)(3). It was not until Gordon and Rubin filed their petitions in the state court to compel satisfaction of the judgments or to reopen those judgments, on December 18, 1981, that there was a pleading filed in the state court proceedings which first set forth any claim for relief against the banks (and, consequently, against the debtor). We interpret the reference in Rule 7004(a)(2) to "the initial pleading" to include the initial pleading filed by any party which sets forth a claim for relief against any other party. This would include not only the initial complaint commencing the action but would also include counterclaims, cross-claims and any other pleading which sets forth, for the first time in that action, a claim for relief. Such an interpretation would include the petitions filed by Gordon and Rubin because they were the first pleading filed by them in which they assert a claim for relief against the banks. Therefore, we conclude that the 30 day period did not begin to run until December 18, 1981, the date on which those petitions were filed by Gordon and Rubin. Consequently, since the application was filed within that 30 day period, the application for removal was timely filed.

■ The final ground asserted by Gordon and Rubin in support of their motion for

---

14. *See* Memorandum in Support of Motion to Remand or, in the Alternative, to Abstain at 9 (filed January 25, 1982).

remand is that, even if the actions were properly removed to this court, we should abstain from hearing this case because it involves solely issues of state law which the state court is competent to decide. Section 1471(d) of Title 28 provides that the bankruptcy court may abstain from hearing a particular proceeding which is related to a case under title 11 if that abstention would be in the interest of justice.[15] In a discussion of when abstention is appropriate under § 1471(d), the bankruptcy court for the Southern District of California stated:

Historically, the abstention doctrine has been invoked in five basic areas, by courts which have nonexclusive jurisdiction. They are:

1. Where it is necessary to determine the constitutionality of a state statute or administrative order under the Federal Constitution in an area where the construction of the pertinent but unclear state law should be interpreted by state courts, which would, perhaps, obviate the necessity for such decision.

. . . .

2. Where a state interest predominates, such as a case involving substantial state policies, for comity, or to achieve a healthy state-federal relationship.

. . . .

3. Where abstention will prevent interference in a state criminal prosecution.

. . . .

4. Where there are unsettled questions of state law.

. . . .

5. Where a state action is pending, federal courts may stay or dismiss the case in the interest of judicial administration, comprehensive disposition of litigation, conservation of judicial resources, or fairness to the parties.[16]

. . . .

The instant case clearly does not fall within the first or third category stated above: There is no criminal prosecution or question of the constitutionality of a state statute involved in the state court proceedings which were removed. Nor do we conclude that any of the other categories are applicable to this case. There is no predominant state interest or substantial state policy which would require us to abstain from hearing the instant case in order to achieve a healthy state-federal relationship. The case at bench involves merely the application of state law to the facts to determine if, under that law, Gordon and Rubin have the right to compel the satisfaction of the judgments against them.

Furthermore, we do not believe that the instant case involves unsettled questions of state law. While Gordon and Rubin emphasize that there is no case under Pennsylvania law which is factually identical to the instant case, we do not find the factual distinctions to be decisive and do find that the legal issues raised by the instant case have been addressed by the Pennsylvania courts. Consequently, we conclude that we are not compelled to abstain in this case because of the presence of any unsettled questions of state law.

Finally, we conclude that the factors cited in the fifth category above require us to hear the instant case rather than to abstain. Because no evidentiary hearings have been held in the state court while several days of hearings have been held in this court on

15. Section 1471(d) states:

(d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

28 U.S.C. § 1471(d).

16. *In re Zamost*, 7 B.R. 859, 862, 7 B.C.D. 34, 35 (Bkrtcy.S.D.Cal.1980) (citations omitted).

issues related to the issues raised in the state proceedings, we conclude that retaining this case will be in the interests of judicial economy and the conservation of judicial resources. Furthermore, retaining the case in this court will result in a speedier determination of the issues as well as a more economical and comprehensive administration of the debtor's estate.

For all of the above reasons, we will not remand or abstain from hearing the case which was removed by the debtor from the state court to this court.

### III. RECONSIDERATION OF ORDER AUTHORIZING DEBTOR'S EMPLOYMENT OF SPECIAL COUNSEL.

The final issue presented herein is whether we should reconsider our order of December 23, 1981, authorizing the debtor to employ David A. Koss, Esquire, ("Koss") as special counsel to commence litigation against Gordon and Rubin on behalf of the debtor. Gordon and Rubin assert that that employment is improper because Koss is the attorney for Allanoff and, thus, there is a conflict of interest between his representation of the debtor and his representation of Allanoff. We would agree with the argument of Gordon and Rubin if our order had appointed Koss as general counsel for the debtor because the simultaneous representation of both the debtor and a general partner of the debtor is prohibited by the Code of Professional Responsibility.[17]

However, we conclude that in the circumstances of this case there is no such prohibition. The application for the appointment of Koss and the order appointing Koss clearly specify that Koss is being employed for the limited purpose of investigating and handling any litigation by the debtor against Gordon and Rubin. There is no conflict between that limited representation of the debtor and Koss's representation of Allanoff because both have the same interest in the litigation against Gordon and Rubin.[18] Furthermore, Koss is uniquely qualified to act as special counsel in this limited role because he has already conducted an investigation of Gordon and Rubin while acting as counsel to Allanoff.

Finally, because Koss has been employed only in the limited role above, his representation of Allanoff will not conflict with any investigation or contemplated action by the debtor against Allanoff. The general counsel for the debtor has stated that any action to be taken against Allanoff would be conducted by him and that Koss would not be involved in any decisions or actions taken with respect to Allanoff. Consequently, we conclude that the retention of Koss, as special counsel to the debtor for the limited purpose of investigating and handling any actions which the debtor may have against Gordon and Rubin, does not involve a conflict of interest and, therefore, our order of December 23, 1981, authorizing Koss's employment for those limited purposes will be reaffirmed.[19]

---

**17.** Canon 5 of the Code of Professional Responsibility requires that "a lawyer should exercise independent professional judgment on behalf of a client." Ethical Consideration 5–18 provides further that:

> A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity. In advising the entity, a lawyer should keep paramount its interests, and his professional judgment should not be influenced by the personal desires of any person or organization.

**18.** Apparently both the debtor and Allanoff contend that Gordon and Rubin were involved in the diversion of certain assets of the debtor while they were general partners of the debtor.

**19.** Gordon and Rubin also raised the issue of whether our order authorizing the employment of Koss was proper because it was entered without any notice to them. We agree with the debtor's assertion that no notice was required to be given to Gordon and Rubin (who were former general partners of the debtor and who were to be the subject of the special counsel's duties) of the employment of the special counsel to the debtor.