**In re BRILLIANT GLASS, INC., Debtor.**

**Bankruptcy No. LA 87–25772–CA.**

United States Bankruptcy Court, C.D. California.

June 15, 1988.

Ronald E. Michelman, Michelman & Michelman, Los Angeles, Cal., for debtor.

Grove, Jaskiewicz, Gilliam & Cobert, Washington, D.C., or Encino, Cal., for Streamline Shipper's Ass'n.

## MEMORANDUM OF DECISION

(On Motion to Enforce Automatic Stay, and Other Relief)

CALVIN K. ASHLAND, Bankruptcy Judge.

Brilliant Glass, Inc. (debtor) moves to enforce the automatic stay and recover sanctions pursuant to Bankruptcy Code § 362(h) against Streamline Shipper's Association (Streamline) for attempting to collect an obligation owed to Streamline by the debtor from the customers of the debtor.

### FACTS

On December 12, 1987, the debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. No trustee was appointed and the debtor continues to operate the business as debtor in possession.

Streamline was the freight carrier for the debtor. The debtor functioned as a consignor and arranged multiple bill of lading contracts involving Streamline as the carrier.

The debtor's president previously informed Streamline of the bankruptcy and Streamline received notice from the bankruptcy clerk's office. On January 4, 1988 Streamline sent letters of demand to the customers of the debtor (consignees). However, upon debtor's request, Streamline refused to retract the demand letters.

Both parties suggest they attempted settlement but contend that the other party has thwarted negotiation efforts.

The debtor contends that all consignees of the debtor have paid the entire obligation to the debtor including freight charges.

The debtor alleges that Streamline's contact with the debtor's customers has violated the automatic stay and resulted in a loss of business. The debtor requests sanctions pursuant to § 362(h). Streamline contends that § 362 is not applicable to a shipper's attempt to collect from the customers of the debtor for pre-petition obligations.

The court requested supplemental briefs which were timely filed by both parties.

## DISCUSSION

The debtor contends that Streamline violated the automatic stay by pursuing collection efforts for freight charges against the consignees. The debtor argues that as consignor, the contractual relationship regarding the freight charges exists only between the debtor and Streamline. The consignees are not liable and Streamline's actions of harrassment allegedly have caused a loss of business to the debtor.

Furthermore, the debtor argues that some customers have been forced to pay Streamline to stop the harrassment and are now requesting credit from the debtor for double payment. According to the debtor, all the consignees have already paid the entire freight obligations to the debtor prior to Streamline's action to collect on the debt.

█ Bankruptcy Code § 362(a)(6) provides that the stay applies to any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case.

The legislative history behind § 362(a)(6) indicates that its purpose is to prevent actions by creditors designed to compel the debtor to repay.

> Inexperienced, frightened or ill-counseled debtors may succumb to suggestions to repay notwithstanding their bankruptcy. This provision prevents evasion of the purpose of the bankruptcy laws by sophisticated creditors. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 342 (1977). S.Rep. No. 95–989, 95th Cong., 2d Sess. 50, 51 (1975), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5836, 5837, 6298.

The legislative history supports a broad construction of the language in § 362(a)(6). The "act" need not be taken directly against the debtor so long as its purpose is clearly to attempt to collect a claim against the debtor. In this case, a variety of circumstances reveals that Streamline's actions against the consignees were designed to force the debtor to pay its debt.

First, the consignees were not liable to Streamline for the charges. The general rule is that the shipper rather than the consignees is primarily liable to the carrier for freight charges. *Louisville & N.R. Co. v. Central Iron & Coal Co.*, 265 U.S. 59, 67, 44 S.Ct. 441, 442, 68 L.Ed. 900 (1924).

To determine if the consignees are contractually liable, the courts must examine the bill of lading which functions both as a receipt and as a contract. *Id.*

In this case, the bills of lading were marked "pre-paid," suggesting that only the debtor would be liable for payment. Also, the debtor, not the consignees contracted with Streamline for the shipping services.

Streamline contends that *States Marine International Inc. v. Seattle First National Bank*, 524 F.2d 245 (9th Cir.1975) stands for the proposition that the consignees remain liable because they accepted responsibility for payment of the charges upon acceptance of the freight.

However, the court in *States Marine* only held that because the bank, which was named as consignee, had no knowledge that it was named as consignee and neither accepted the goods nor otherwise accepted dominion or control over them, the bank was not liable for shipping charges.

Because the bills of lading are definitive on the issue of liability, there is no need to determine if the consignee's conduct would permit a promise to pay to be implied.

Under these circumstances, the consignees cannot be liable for freight charges. *See In re Penn–Dixie Steel Corp.*, 6 B.R. 817, 822–23 (Bankr.S.D.N.Y.1980), *aff'd* 10 B.R. 878 (S.D.N.Y.1981).

Second, Streamline apparently knew that the customers were not liable. The customers had informed Streamline that they had already paid. Thus, there was nothing owed to Streamline by the customers. Streamline pursued the customers because it could not attack the debtor directly.

Some customers have paid Streamline anyway and are now requesting credit from the debtor for payment of this pre-Chapter 11 obligation to Streamline.

Third, the debtor also asserts a loss of business. First, by the refusal of Poston Warehouse in Memphis, Tennessee to re-

lease the debtor's goods. Second, the debtor contends that some customers have threatened to stop doing business with the debtor.

Bankruptcy Code § 362(h) provides, in part, that a willful violation of the stay may result in recovery of actual damages, including costs and attorney's fees and in certain circumstances, punitive damages.

The court in *In re Stonegate Sec. Services, Ltd.*, 56 B.R. 1014 (Bankr.N.D.Ill.1986) found that attempts to deter customers of the debtor from doing business with the debtor violated the automatic stay and mandated sanctions pursuant to § 362(h).

In *Stonegate*, upon debtor's default and bankruptcy filing, the creditor parked a truck outside debtor's business premises with signs that read "Stonegate Auto Alarms does not pay supplier," and "Crime does not pay, Stonegate Auto Alarms the same way." The court granted sanctions because the creditor impaired the debtor's chances to effectively reorganize.

In this case, Streamline's actions are impairing the ability of the debtor to effectively reorganize. Streamline knows that it cannot collect against the debtor because of the existence of the automatic stay. However, in an effort to compel the debtor to pay, Streamline has willfully pressured the debtor's customers for payment. Such acts violate the automatic stay.

I am not prepared to extend the benefits of § 362(h) to a corporation because § 362(h), by its words, benefits an individual.

However, contempt is an appropriate remedy for a willful violation of the automatic stay. The bankruptcy court does not have the power to impose civil contempt but may certify a finding of contempt to the district court. *In re Sequoia Auto Brokers*, 827 F.2d 1281 (9th Cir.1987).

Thus, the debtor can recover for actual damages such as the cost of employing attorneys in bringing this motion, lost business, and other expenses incurred by reason of Streamline's willful action. *See* 2 *Collier on Bankruptcy*, 362-72-74 (15th ed. 1988).

## CONCLUSION

Streamline's actions were acts to collect a debt against the debtor within the meaning of § 362(a)(6). The debtor shall schedule a hearing to determine the appropriate amount of damages.

This memorandum of decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. A separate order will be entered.