**In re MCEG PRODUCTIONS, INC., a Delaware corporation, Debtor.**

**Bankruptcy No. LA90–20579RR.**

United States Bankruptcy Court, C.D. California.

Oct. 17, 1991.

Joseph A. Eisenberg, Leslie A. Cohen, Levene & Eisenberg, Los Angeles, Cal., for plaintiff.

Joel P. Kay, Sheinfeld, Maley & Kay, P.C., Houston, Tex., Karl E. Hays, Heard, Goggan, Blair & Williams, San Antonio, Tex., for defendant.

## MEMORANDUM OPINION

ROBIN L. RIBLET, Bankruptcy Judge.

The issues before this Court are whether an injunctive action filed by Pheasantry Films, Inc. and Bancannia Film Distribution, Pty–Ltd. (collectively "Pheasantry" unless otherwise stated) constituted an act to "exercise control" over certain contract rights of the chapter 11 estates of MCEG, Inc. and various of its subsidiaries, in violation of Bankruptcy Code § 362(a)(3), and if so, whether damages, including punitive damages, should be awarded.[1] The debtors (collectively "MCEG" unless otherwise stated) and General Electric Capital Corporation ("GECC"), formerly MCEG's primary secured creditor, have brought a joint motion requesting such relief under § 362(h). The Official Committee of Unsecured Creditors ("Creditors Committee") has joined in the motion.

This court has jurisdiction over the dispute pursuant to 28 U.S.C. § 157(b)(1).

## BACKGROUND

MCEG, Inc. and its subsidiaries produce and distribute motion pictures and related entertainment products in the United States and abroad. The present bankruptcy proceedings began by an involuntary chapter 7 petition filed against MCEG Productions, Inc. on August 17, 1990, followed by petitions against MCEG, Inc. and Virgin Vision, Inc. filed on October 31, 1990. All three cases were subsequently converted to chapter 11 in November 1990. Thirty-five subsidiaries have since filed voluntary chapter 11 petitions between November 1990 and June 1991.

The alleged violations of § 362(a)(3) occurred in connection with this Court's approval of a compromise and sale transaction between certain of the MCEG debtors, GECC, the Virgin Group, and Kidder Peabody Group, Inc. at the conclusion of two hearings held on January 15 and 17, 1991. Under the compromise, GECC reduced by $75 million its claim against MCEG, released its blanket lien on all of MCEG's assets, and provided a non-recourse loan of $625,000 to facilitate investigation and prosecution of claims by the Creditors Committee. In exchange, and as part of the transaction, MCEG transfered the stock of Virgin Vision Limited, a non-debtor but financially unstable British subsidiary of MCEG, Inc., to GECC. The agreement also provided for the mutual release of claims between the participating MCEG debtors and GECC, with the exception of GECC's remaining $10 million unsecured claim, as well as certain other releases among the parties to the agreement.

Pheasantry presented vigorous opposition during the hearings on the proposed transaction.[2] Its concern was that the releases granted under the agreement as well as the transfer of assets would negate or otherwise negatively impact its asserted claim against debtor Virgin Vision, Inc. It argued further that the transaction was improvident at such an early stage of MCEG's reorganization when it was not clear to what extent creditors would be

---

1. All statutory references are to the Bankruptcy Code unless otherwise stated.

2. Pheasantry and Bancannia are prepetition creditors of debtor Virgin Vision, Inc. based on a $115 million default judgment against it entered by a Texas State Court. The underlying Texas action concerned Virgin Vision, Inc.'s alleged defaults under an agreement with Pheasantry and Bancannia for distribution of the film "Communion."

affected by the proposed transaction. Despite Pheasantry's protestations, the court, after extensive discussion, conditionally approved the transaction at the conclusion of the initial hearing on January 15.[3]

The following day, on January 16, 1991 Pheasantry filed a petition for damages and injunctive relief against GECC, Kidder Peabody & Co., Inc., and Kidder Peabody Group, Inc. in the State District Court of Bexar County, Texas.[4] Neither MCEG, Inc., nor any of its debtor subsidiaries were named as defendants. The petition sought, among other relief, to enjoin the defendants from "completing any proposed or anticipated sale, transfer, purchase or acquisition of MCEG, Inc. or its subsidiaries or related companies until such time as plaintiffs have been afforded the opportunity to thoroughly investigate this transfer and its effect on the rights of the parties." It is this injunctive action by Pheasantry that allegedly violated the automatic stay.

MCEG and GECC sought a temporary restraining order in the Bankruptcy Court to prevent the injunctive action from going forward in Texas and otherwise delaying the closing date for the sale transaction. The Court granted the request at a noticed hearing at which neither Pheasantry nor its counsel appeared.

## DISCUSSION

Bankruptcy Code § 362(a)(3) enjoins the enforcement of any act "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Property of the estate is defined under § 541(a)(7) as including "[a]ny interest in property that the estate acquires after the commencement of the case."

■ MCEG and GECC argue that MCEG's contract rights created by the post-petition compromise and sale agreement were property of the estate, relying on *In re Carroll*, 903 F.2d 1266 (9th Cir. 1990). In *Carroll* the debtor was the managing partner of a partnership which owned a motel complex in San Diego. The debtor entered into a post-petition management contract to manage the hotel, as well as a financing arrangement that required the reduction of the debtor's interest to that of a limited partner. The debtor had sought a temporary restraining order to enjoin the hotel's termination of the agreement. The Ninth Circuit held that the management agreement was property of the estate and, as such, was analogous to executory contracts that may not be terminated without first seeking relief from stay. *Id.* at 1271.

The Ninth Circuit's decision in *Carroll* leaves no doubt that the compromise and sale agreement here constituted property of the estate. MCEG entered into a post-petition agreement, as in *Carroll*, which created specific contract rights subject to the automatic stay.

■ Pheasantry does not direct its argument to whether the contract was property of the estate. Instead, it argues that the injunctive action was limited to independent causes of actions against GECC and the Kidder entities which did not in any way interfere with MCEG's property, including the compromise and sale agreement.

*In re Dublin Properties*, 20 B.R. 616 (Bankr.E.D.Pa.1982), is instructive. In *Dublin Properties* a consent judgment had been entered into between the debtor and certain banks as secured creditors. Under the judgment the banks agreed to assign to the debtor all of their rights in certain guaranties and judgments held by the banks against the debtor's general partners in exchange for obtaining relief from stay to pursue foreclosure proceedings against the debtor's sole asset. The general partners and their counsel were aware of the terms of the agreement as they had

---

3. A second and final hearing was held on January 17 to accommodate last minute changes concerning the language of the agreement. The Court approved the transaction in its final form, and an order to that effect was entered on January 18, 1991.

4. The action pled several causes of action, including fraud and breach of contract under theories of alter ego and conspiracy concerning the relationship among the defendants and nondefendants, MCEG, Inc. and Virgin Vision, Inc.

appeared in opposition at the hearing on approval of the consent judgment.

Shortly after the consent judgment was entered, the general partners made a demand upon the debtor and banks that the assigned judgments be satisfied by operation of certain releases given in the consent agreement. When the debtor and banks refused to accede to these demands the general partners brought suit in state court to demonstrate satisfaction of the judgments. The debtor was not named in the action. The debtor instituted contempt proceedings on the grounds that § 362(a)(3) had been violated. The general partners, as in the present case, argued lack of interference. Specifically, they argued that no violation had occurred because they had not attempted to obtain possession of estate property but merely sought a determination that the judgments against them had been satisfied.

The bankruptcy court agreed that no act to obtain possession had occurred, but concluded nonetheless that the suit constituted an act to deprive the estate of property, in violation of § 362(a)(3). *Id.* at 620. In reaching its conclusion, the court stated: "[w]e find it inconceivable to imagine that anyone familiar with the Bankruptcy Code could, in good faith, believe that the automatic stay provisions of the Code do not prohibit a person from taking action in another court to eliminate a property interest held by the estate." *Id.*

The injunctive action here was equally if not more intrusive of MCEG's property interest than in *Dublin Properties.* In both instances the actions taken in another court were nothing more than thinly disguised attempts to circumvent the automatic stay. As in the *Dublin Properties* case, the debtor entities here were not named as defendants in the injunctive action. Pheasantry also was not a party to the compromise agreement. Nevertheless, the injunctive

action here clearly affected MCEG's interest in the compromise and sale agreement. An attempt to enjoin GECC's contract rights in the compromise and sale necessarily implicated MCEG's rights in the same agreement.[5] Moreover, § 362(a)(3) protects against such acts to exercise control over property of the estate without distinction as to the form such interference takes. Accordingly, the filing of the injunctive action was a violation of § 362(a)(3).

██ Having determined that a technical violation of the stay was committed, this court must next consider whether that violation was wilful and, if so, whether MCEG is entitled to damages under § 362(h). Only wilful violations are compensable. *In re Zartun,* 30 B.R. 543, 546 (Bankr.9th Cir.1983). Additionally, specific intent to violate the stay is not required. *In re Bloom,* 875 F.2d 224, 227 (9th Cir. 1989). The wilfulness requirement is satisfied so long as the miscreant knew of the automatic stay and the actions which violated the stay were intentional. 875 F.2d at 227 *citing In re Inslaw, Inc.,* 83 B.R. 89, 165 (Bankr.D.D.C.1988).

██ There is no question that Pheasantry knew of the automatic stay as it participated in MCEG's bankruptcy proceedings concerning the compromise and sale agreement. That Pheasantry did not intend to seek injunctive relief is belied by its pleading entitled "Petition and Application for Injunctive Relief." The timing of the action is further evidence of wilfulness in this instance. The action was filed the day after the hearing for approval of the compromise and sale at which time Pheasantry presented its opposition. Pheasantry was well aware of the terms of the compromise and sale and, as such, the injunctive action was designed to interfere, and did interfere with property of the estate. *See In re Taco Ed's Inc.,* 63 B.R. 913 (Bankr. N.D.Ohio 1986) (sale of estate property by

---

5. Pheasantry would have the court believe that interference could not have occurred because, while the petition referenced injunctive relief, the petition was deficient as to the requirements for obtaining a temporary restraining order under Texas law, and it had no intention of following through on its request for injunctive relief.

A change of heart may on occasion rehabilitate a villain in the movies. Not so here. The action was designed to impede the consummation of the compromise and sale transaction even if Pheasantry did not fully pursue or ultimately obtain injunctive relief.

third party, despite knowledge of the district court's injunction prohibiting disposition of assets by entities in possession of debtor's property, evidenced wilful violation of § 362(a)(3)).

■ While this court finds that Pheasantry wilfully violated the stay, the more essential issue to be resolved is whether MCEG, Inc., and its debtor subsidiaries, as corporate entities, are entitled to damages. Section 362(h) provides: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

There is a split in Circuit authority on whether non-individual debtors may obtain damages under § 362(h). MCEG argues that the court should follow the lead of the Fourth Circuit in *In re Better Homes of Virginia, Inc.*, 804 F.2d 289 (4th Cir.1986). The Court in *Better Homes of Virginia, Inc.*, held that § 362(h) benefits corporate debtors as well as individual debtors. *Id.* at 292; *See also In re Atlantic Business and Community Corp.*, 901 F.2d 325 (3rd Cir.1990). On the other hand, Pheasantry relies on the Second Circuit's decision in *In re Chateaugay Corp.*, 920 F.2d 183 (2nd Cir.1990), which strictly construed the term "individual" in § 362(h). The Second Circuit held that only debtors who are natural persons may receive damages under that section.

Bankruptcy courts generally have followed the *Better Homes of Virginia* approach. *See, e.g., In re Mallard Pond Partners*, 113 B.R. 420, 423 (Bankr. W.D.Tenn.1990) (partnership debtor considered individual for purposes of § 362(h)); *In re Jim Nolker Chevrolet–Buick–Oldsmobile*, 121 B.R. 20 (Bankr.W.D.Mo.1990); *In re Tel–A–Communications Consultants, Inc.*, 50 B.R. 250, 254 (Bankr. D.Conn.1985). *Contra In re Prairie Trunk Ry.*, 125 B.R. 217 (N.D.Ill.1991); *In re Williams*, 124 B.R. 311, 317 (Bankr. C.D.Ca.1991); *In re Brilliant Glass*, 99 B.R. 16, 18 (Bankr.C.D.Ca.1988).

Although Pheasantry's actions certainly rise to the level of sanctionable conduct, this court is limited by the term "individual" in awarding any such sanctions under § 362(h). There is visceral appeal in the *Better Homes of Virginia, Inc.*, reasoning that the term "individual" should be read more broadly than its literal meaning since § 362 taken as a whole protects all types of debtors. *Better Homes of Virginia, Inc.*, 804 F.2d at 292. Such an interpretation would allow the court to fashion a remedy befitting the violations found in this case.

Nevertheless, this court finds more persuasive the thorough analysis found in *Chateaugay* and echoed in *Prairie Trunk Ry.* The Second Circuit's discussion of the principles of statutory interpretation as set forth in *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), as well as its considerations of legislative intent are compelling. Although "individual" is not a defined term in the Code, Congress' use of the term can leave no doubt that it is limited to a natural person. *See* 11 U.S.C. §§ 101(41) (defining "person" to include individual), 101(45) (limiting "relative" to an individual) and 109(e) (limiting chapter 13 relief only to individuals and their spouses). Furthermore, while § 362(a) was enacted in 1978, accompanied by extensive legislative history indicating Congressional intent to provide extensive protection to all debtors, § 362(h) was added by the 1984 "Consumer Credit Amendments" without benefit of legislative history. Accordingly, the Congressional intent imputed by *Better Homes of Virginia, Inc.*, and its progeny is mere speculation.

■ In the absence of legislative history indicating an intended meaning for "individual" other than that clearly reflected in the statute, this court declines to construe § 362(h) as broadly as the aggrieved parties would like. Despite the equitable result which such a construction could achieve, it is for Congress rather than this court to rewrite the statute. Bankruptcy courts, as courts of equity, are bound by express statutory authority to the same extent as courts of law. *In re Shoreline Concrete Co.*, 831 F.2d 903, 905 (9th Cir. 1987). As a result, the court may not

overlook the plain meaning of the statute even if fairness would dictate a different result. *See In re Kelly*, 841 F.2d 908, 913, fn. 4 (9th Cir.1988).

## CONCLUSION

Although the filing of the injunctive action in this instance wilfully violated the automatic stay, this court may not award damages to MCEG, Inc., and its debtor subsidiaries, as corporate entities, under the rationale set forth in *In re Chateaugay Corp.* From this conclusion it follows that neither GECC nor the Creditors Committee are entitled to damages on the basis of § 362(h) as they are not individuals.[6]

Accordingly, the motion for sanctions is denied.

---

**6.** The aggrieved parties are not entirely without remedy, however, as civil contempt may be available to MCEG, GECC and the Creditors Committee. *See In re Chateaugay Corp.*, 920 F.2d at 187; *In re Prairie Trunk Ry.* 125 B.R. at 222; *In re Brilliant Glass*, 99 B.R. at 18.