**In re LEVITZ FURNITURE INCORPORATED, et al., Debtor.**

**Levitz Furniture Incorporated, Plaintiff,**

**v.**

**T. Rowe Price Recovery Fund, L.P. and Carl Marks Management Company, L.P., Defendants.**

**Bankruptcy Nos. 97–1842(MFW) to 97–1852(MFW).**
**Adversary No. A–00–600(MFW).**

United States Bankruptcy Court, D. Delaware.

June 14, 2000.

Anthony W. Clark, Perham Gorji, Skadden Arps Slate Meagher & Flom, LLP, Wilmington, DE, Sally McDonald Henry, Skadden Arps Slate Meagher & Flom, LLP, New York City, for Plaintiff.

Kevin Gross, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, DE, Lisa Beckerman, Akin Gump Strauss Hauer & Feld, LLP, New York City, for Official Committee of Unsecured Creditors.

Martin Tully, David Teklits, Eric D. Schwartz, Gregory Werkheiser, Morris Nichols Arsht & Tunnell, Wilmington, DE, Robert Drain, Martin Flumenbaum, Paul Weiss Rifkind Wharton & Garrison, New York City, for Defendants.

John D. McLaughlin, Jr., Maria D. Giannarakis, Philadelphia, PA, Office of United States Trustee.

### OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Motion of Levitz Furniture Corporation ("the Debtor") for Preliminary Injunction seeking to enjoin the prosecution of an action in the Delaware Chancery Court brought by T. Rowe Price Recovery Fund, L.P. and Carl Marks Management Company, L.P. (collectively "the Defendants") against Seaman Furniture Company, Inc. ("Seaman") and certain of its officers, directors and shareholders (collectively "the Seaman Parties"). After a hearing held on June 6, 2000, and consideration of the briefs filed by the parties, we deny the Motion for the reasons set forth below.

### I. BACKGROUND FACTS

The Debtor is a debtor in possession in cases commenced together with several of its affiliates (collectively "the Debtors") under chapter 11 of the Bankruptcy Code on September 5, 1997. During the chapter

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

11 case the Debtors have made several operational changes, taking advantage of relevant provisions of the Bankruptcy Code to do so, such as section 365 permitting the rejection of leases and executory contracts and section 364 permitting debtor in possession financing.

Pursuant to a Court-imposed deadline to file a plan of reorganization, the Debtors have conducted negotiations with the Creditors' Committee, the DIP lenders and other significant constituencies. Recently the Debtor negotiated and executed certain agreements with Seaman on which the Debtors hope to base their joint plan of reorganization ("the Seaman Agreements"). The Seaman Agreements are subject to Bankruptcy Court approval, which the Debtor hopes to obtain at the time of confirmation of the plan of reorganization.[2] Essentially, the Seaman Agreements provide for Seaman to operate the Debtors' East Coast operations while the Debtors will continue to operate the West Coast locations. In addition, Seaman will perform certain services for all the Debtors' locations (such as accounting, advertising, finance, inventory control). The Debtor believes that the synergies achieved by this shared arrangement will significantly improve its value and financial results.

To accomplish this, a new entity, Levitz Home Furnishings, Inc. ("LHFI"), will be formed to own the Debtors. The Seaman Agreements contemplate that the majority shareholder of Seaman will exchange its Seaman stock for LHFI stock; the other shareholders of Seaman will be given the opportunity to do the same on a pro rata basis. Creditors of the Debtors will also be offered stock in LHFI pursuant to the plan of reorganization.

Subsequent to the negotiation of the Seaman Agreements, on or about April 26, 2000, the minority shareholders of Seaman instituted a suit in the Delaware Chancery Court against the Seaman Parties ("the Chancery Court Action"). The Chancery Court Action seeks, inter alia, a declaration that the Seaman Parties breached their fiduciary duties, an injunction of any action by the Seaman Parties to consummate the Seaman Agreements, a rescission of the Seaman Agreements (if they are consummated), and an award of compensatory damages. As the result of a telephone conference with the parties, the Chancery Court has scheduled a prompt hearing for June 19, 2000, on the equitable relief sought in that Action, namely whether the consummation of the Seaman Agreements by the Seaman Parties should be enjoined or rescinded.[3]

On May 11, 2000, the Debtor instituted the instant adversary proceeding in the Bankruptcy Court against the Defendants (the Plaintiffs in the Chancery Court Action) seeking a declaration that the Defendants have violated the automatic stay by the institution of the Chancery Court Action, a declaration that the Action is a tortious interference with a contractual right of the Debtor in the Seaman Agreements, an injunction of the continuance of the Chancery Court Action or any other action to interfere with the Seaman Agree-

---

**2.** The Debtors filed their joint Disclosure Statement with Respect to Second Amended Plan on May 26, 2000, and a hearing on approval of the Disclosure Statement is currently scheduled for June 21, 2000.

**3.** The expedited hearing on the equitable relief was scheduled at the request of the Seaman Parties who argued that any delay in resolution of that issue would have an adverse impact on the Debtors' bankruptcy cases by either (1) delaying approval of the Disclosure Statement (and, consequently, confirmation) or (2) mailing of a Disclosure Statement and confirmation of a Plan which is later determined to be defective because the agreements on which it is premised are rescinded.

ments, and an award of actual and punitive damages, attorneys' fees and costs.

The Debtor's Motion for a preliminary injunction was heard on June 6, 2000. At that time the Debtor modified its request to seek only an injunction of the Chancery Court Action to the extent that it sought an injunction or rescission of the Seaman Agreements. Further, while it sought only a preliminary injunction, the Debtor asserted that it believed that confirmation of the plan of reorganization (which it hoped would occur this Summer) would moot the equitable relief sought by the Defendants in the Chancery Court Action. Therefore, the Debtor is essentially seeking a permanent injunction of the equitable relief sought by the Defendants in the Chancery Court Action.[4] We permitted the parties to submit letter briefs after the hearing by June 12, 2000.

## II. *DISCUSSION*

■ To obtain a preliminary injunction, the Debtor must establish four elements: (i) a likelihood of success on the merits of the underlying action, (ii) that it will suffer irreparable harm absent injunctive relief, (iii) that the injunction will not cause substantial harm to the defendant, and (iv) that public policy does not militate against an injunction. *See, e.g., Gerardi v. Pelullo,* 16 F.3d 1363, 1373 (3d Cir.1994); *In re American Film Technologies, Inc.,* 175 B.R. 847, 849 (Bankr.D.Del.1994).

### A. *Likelihood of Success on the Merits*

The Debtor asserts that it will succeed on the merits of its complaint. That complaint asserts two claims against the Defendants: first, that the institution of the Chancery Court Action was a violation of the automatic stay under 11 U.S.C.

§ 362(a)(3); and second, that the Chancery Court Action was a tortious interference with the Debtor's contract rights.

### 1. *Violation of the Automatic Stay*

The Debtor asserts that the institution of the Chancery Court Action violated section 362(a)(3) of the Bankruptcy Code which provides that the filing of a bankruptcy case effects a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The Debtor asserts that its interest in the Seaman Agreements is clearly property of the estate, since the definition of property of the estate includes "any interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). *See, e.g., In re Carroll,* 903 F.2d 1266, 1270 (9th Cir.1990) (property of estate includes post-bankruptcy contract executed by debtor); *In re MCEG Productions, Inc.,* 133 B.R. 232, 235 (Bankr.C.D.Cal.1991) (same).

■ The Debtor asserts that the *MCEG* case supports its argument that the Chancery Court Action is a violation of the automatic stay. In that case, during the *MCEG* chapter 11 case, the debtor and its secured creditor had entered into a compromise settlement pursuant to which the debtor agreed to transfer its ownership interest in a subsidiary which was also in bankruptcy. 133 B.R. at 233. A motion for approval of the compromise was filed in the Bankruptcy Court. *Id.* A creditor of the subsidiary objected to that transfer arguing that the transfer would eliminate the rights of the creditors of the subsidiary to recover on their claims. *Id.* After the Bankruptcy Court approved the transfer

---

**4.** The Debtor does not seek to enjoin the prosecution of the Chancery Court Action against the Seaman Parties for damages—so long as it does not interfere with the consummation of the Seaman Agreements.

over its objection, the creditor instituted a suit in state court against the secured creditor/transferee seeking to enjoin the consummation of the transfer. *Id.* at 234. The debtor and secured creditor sought an injunction of the state court suit in the Bankruptcy Court. *Id.* The Bankruptcy Court granted the injunction, finding that the creditor's actions violated the automatic stay because the state court suit clearly affected and was an act to exercise control over, the debtor's interest in the agreement, which was property of the estate. *Id.*

However, the *MCEG* case is factually distinguishable from the instant case. First, in that case, the defendant was a creditor of one of the debtors; here the Defendants are not creditors or, arguably, even parties in interest in this bankruptcy proceeding. Their only connection to the bankruptcy case is that they are minority shareholders of a party which has entered into agreements with the Debtor.

Second, in the *MCEG* case, the creditor had already litigated the issues in the bankruptcy court, and lost. In fact, the creditor's state court suit was predicated on the same arguments that it had raised in the Bankruptcy Court proceeding. Thus, the Bankruptcy Court in *MCEG* found the violation willful since the creditor was well aware that its actions were interfering with rights which the debtor had pursuant to the bankruptcy court order approving the transaction. *Id.* at 235. In this case, the issues have not already been litigated in this Court, so there is no question that the Defendants are seeking to collaterally attack a decision of this Court.[5]

Thus, this case is not similar to the typical section 362(a)(3) cases where a creditor seeks to foreclose on property of the estate or exercise direct control over that property in order to ensure that its claim is repaid. In this case, the Defendants are not seeking to obtain the benefits of the contract for themselves nor are they seeking to terminate a valid contract which they have with the Debtor. In contrast, the Defendants are seeking to enforce their own rights vis a vis those with a fiduciary duty to them, all non-debtors. While the result of their suit may indirectly affect the estate, it is not an action against property of the estate or to exercise control of property of the estate.

Further, unlike in *MCEG*, there has been no ruling that the Seaman Agreements are valid and enforceable. Thus, the Debtor's argument that it has a property interest in the Seaman Agreements is premature. Whether the Debtor has a property interest depends on the ultimate resolution of issues raised in the Chancery Court Action, as well as in this Court. From the perspective of the bankruptcy case, the Debtor concedes that it could not enter into the Seaman Agreements in the ordinary course of its business. Consequently, the Debtor is not empowered to enter into them without Bankruptcy Court approval pursuant to section 363(b) or as part of a confirmed Plan under section 1129.

The issues raised in the Chancery Court Action are also relevant to a determination of whether the Debtor has a property interest in the Seaman Agreements. If the Chancery Court concludes that the Seaman Parties breached their fiduciary

---

5. Similarly in the case of *In re Dublin Properties,* 20 B.R. 616 (Bankr.E.D.Pa.1982), rev'd on other grounds, sub. nom. *Frankford Trust Co. v. Allanoff,* 29 B.R. 407 (E.D.Pa.1983), the defendant was also a party in interest in the bankruptcy case who had raised the issues before the Bankruptcy Court, and lost, before filing suit in the state court to enjoin the transaction. That case is similarly distinguishable from the case sub judice.

duties in executing the Seaman Agreements, rescission may be an appropriate remedy. In that event, the Debtor would have no property interest in the Agreements as they would be void.

 This case is, in fact, virtually identical to the *In re Continental Air Lines, Inc.*, 61 B.R. 758 (S.D.Tex.1986) case. In *Continental,* the debtor sought to enjoin a suit commenced by the minority shareholders of a company the debtor had targeted for acquisition. The debtor, like the Debtor in this case, asserted that the minority shareholder suit violated section 362(a)(3). The *Continental* Court rejected the debtor's argument:

> Appellee's contention that after-acquired property becomes property of the estate pursuant to subsection 541(a)(7) is well-founded. However, the explicit language of the Code, legislative history, and case law reveals scant support for the proposition that subsection 362(a)(3) bars the commencement or continuation of Appellants' post-petition cause of action. Although the definition of property for purposes of the Code is broad, and encompasses all kinds of property, including tangible and intangible property, choses in action, and causes of action, *subsection 362(a)(3) does not bar every proceeding hostile to a debtor's claimed interest in property, no matter how tangible, unmatured or unliquidated the debtor's claim, and no matter how indirect the attack upon the estate's interest in property.* The commencement of proceedings based upon a post-petition cause of action against the debtor is generally not encompassed by subsection 362(a)(3), even when a substantial claim adverse to the debtor's claimed interest in property is asserted which might ultimately establish that the estate has no legal or equitable interest in the claimed property. The contrary interpretation would run counter to the pervasive distinction between pre and post-bankruptcy events, and would render subsection 362(a)(1) generally coextensive with, and superfluous to, 362(a)(3).

61 B.R. at 778 (emphasis added).

The *Continental* Court concluded that the minority shareholders' action did not violate section 362(a)(3). *Id.* at 779. In so doing, it noted that the minority shareholders might be entitled to a constructive trust on the property which the debtor asserted was property of the estate and that the Bankruptcy Code recognizes constructive trusts as exceptions to the definition of property of the estate. *Id.* at 780, n. 44; *see also* 11 U.S.C. § 541(d).

We agree with the reasoning of the *Continental* Court and decline to extend the reach of section 362(a)(3) as far as the Debtor asserts. We conclude that that section does not bar the Defendants from prosecuting the Chancery Court Action.

2. *Annulment of the Stay*

Even if the stay were applicable, however, we would annul the stay to permit the Chancery Court Action to proceed on the equitable remedies issues, which are the ones which most directly affect the Debtor. *See, e.g., In re Siciliano*, 13 F.3d 748 (3d Cir.1994) (court may annul stay and retroactively validate any violation of the stay); *Continental,* 61 B.R. at 779–80 (suggesting that even if section 362(a)(3) applied to the minority shareholders' suit, the stay should have been modified to permit the suit to proceed).

The Debtor conceded at oral argument that the Defendants may continue to prosecute their legal claims against the Seaman Parties and would be able to press their equitable claims in the Chancery Court Action, if they obtained relief from the stay. Like the *Continental* Court, we

conclude that if the stay is applicable, it should be annulled to permit the Chancery Court Action to proceed.

■ Relief from the stay to proceed with a state court action may be granted where no great prejudice to the Debtor will result from its continuance, where hardship will inure to the non-debtor if relief is not granted and where the creditor has some chance of prevailing. *See, e.g., In re Rexene Products Co.*, 141 B.R. 574, 576 (Bankr.D.Del.1992).

■ In this case, there does not appear to be any significant prejudice to the Debtor by allowing the Chancery Court Action to proceed. As noted above, the issues raised in that Action must be decided before the confirmation of the Debtors' plan of reorganization, whose feasibility is premised on the effectiveness of the Seaman Agreements. The Chancery Court has already scheduled an expedited hearing on the equitable issues for June 19 and all indications are that it will be promptly decided.[6] We do not have jurisdiction over the issues or parties to the Chancery Court Action, since they involve only rights of non-debtors against each other.

Further, great hardship will result if the Defendants are not permitted to proceed now, because (as the Debtor hopes) they may lose a valuable remedy (the equitable remedy of injunction or rescission) if the issue is not decided in the Chancery Court Action before the confirmation hearing. Finally, the Defendants have met the third prong, since that merely requires a show-

ing that their claim is not frivolous. *Rexene,* 141 B.R. at 578.

### 3. *Tortious Interference with Contractual Rights*

The gravamen of the Debtor's argument is that the institution of the Chancery Court Action is a tortious interference with the Debtor's contractual relationship with Seaman. However, this argument also begs the question of whether or not Seaman could enter into the Agreements or whether doing so was a breach of its fiduciary duty. Any decision on this count of the Debtor's complaint, therefore, must await a decision in the Chancery Court Action. If the Defendants are not successful in the Chancery Court Action, then the Debtor may pursue its complaint against them on this count.

### B. *Irreparable Harm to the Debtor*

As we concluded above in connection with the relief from stay issue, we do not find that there will be any irreparable harm to the Debtor from denying the injunction it requests. The only harm that will accrue is that a decision on the Chancery Court Action will be rendered, but we believe that is of benefit to the Debtor as it will resolve the issue of whether the Debtors' plan of reorganization which is premised on the Seaman Agreements is feasible.

### C. *Harm to the Defendants*

As noted above, the Defendants will be harmed if an injunction is entered. The result of the position urged by the Debtor is effectively to deprive the Defendants of

---

**6.** We feel compelled to correct an impression that the parties in the Chancery Court Action may have made on the Chancery Court. While the Debtors' Disclosure Statement hearing is scheduled for June 21, 2000, and prompt resolution of the Bankruptcy and Chancery Court issues is of vital concern to the Debtors and all their creditors, a full

consideration and determination of the equitable issues in the Chancery Court Action is of paramount importance. Therefore, this Court will continue the Disclosure Statement hearing if the Chancery Court is unable to conclude its hearing and make a reasoned determination of the matter before it by June 21.

a remedy to which they assert they are entitled in the Chancery Court Action, namely an injunction or rescission of the Seaman Agreements. Since these are equitable remedies, they are only available if legal remedies are insufficient. Therefore, the Debtors' concession that the Defendants can pursue their legal remedies is insufficient to make the Defendants whole, if they are in fact entitled to equitable remedies. Thus, depriving the Defendants of their equitable · remedies could cause them irreparable harm.

### D. *Public Policy*

Since we conclude that the Bankruptcy Code does not support an injunction in this case, the public policy considerations of the Bankruptcy Code do not outweigh any policy considerations on which the Chancery Court Action is based.

### III. *CONCLUSION*

For the foregoing reasons, we deny the Debtor's Motion for preliminary injunction.