**In re CHATEAUGAY CORPORATION, Reomar, Incorporated, the LTV Corporation, et al., Debtors.**

**MARITIME ASBESTOSIS LEGAL CLINIC, Plaintiff–Appellant,**

v.

**LTV STEEL COMPANY, INC., et al., Defendant–Appellee.**

**No. 391, Docket 90–5032.**

United States Court of Appeals, Second Circuit.

Argued Oct. 4, 1990.

Decided Dec. 10, 1990.

Alan Kellman (Leonard C. Jaques, of counsel), Maritime Asbestosis Legal Clinic, Detroit, Mich., for appellant.

Herbert S. Edelman (Steven E. Fox, of counsel), Kaye, Scholer, Fierman, Hays, & Handler, Davis Polk & Wardwell, New York City, for appellee.

Before CARDAMONE and PRATT, Circuit Judges, and MUKASEY,* District Judge.

MUKASEY, District Judge:

In *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir.1990), "we save[d] for another day the intriguing question whether, when the addition of subsection (h) was made to section 362 [of the Bankruptcy Code], its language expressly applicable to provide relief only to 'an individual' should in some way be construed to permit relief to corporate entities...." That day has arrived. As set forth more fully below, the plain language of § 362(h) prevents application of that section to benefit debtors that are not natural persons.

**I.**

Maritime Asbestosis Legal Clinic ("MALC") represents merchant seamen exposed to asbestos during their employment. LTV Steel and 66 of its affiliates (collectively "LTV") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "code") on July 17, 1986. In July 1988, MALC began lawsuits in the United States District Court for the Eastern District of Michigan on behalf of 220 merchant seamen who had been exposed to asbestos. LTV was named as a defendant in three of these actions, which were dismissed soon thereafter when LTV told MALC that the suits were forbidden by the automatic stay provision of § 362(a) of the code.

In March of 1989, MALC filed amended complaints on behalf of over 1300 plaintiffs in a separate mass tort litigation in the Northern District of Ohio. LTV was

---

* The Honorable Michael B. Mukasey of the United States District Court for the Southern District of New York, sitting by designation.

named as a defendant in 38 of these amended complaints, including three in behalf of the plaintiffs whose claims had been dismissed earlier in the Eastern District of Michigan. After service of these amended complaints, LTV filed an application in the Bankruptcy Court for the Southern District of New York, seeking an order, *inter alia,* (i) enjoining the further prosecution of the 38 actions ("Maritime Asbestos Actions"), and (ii) awarding compensatory and punitive damages pursuant to §§ 105(a) and 362(h) of the code and Bankruptcy Rule 9020.

In an order dated May 18, 1989, the Honorable Burton Lifland of the Bankruptcy Court for the Southern District of New York, applying §§ 105(a) and 362(a), permanently enjoined further prosecution of the Maritime Asbestos Actions. Judge Lifland also determined that the commencement of the Maritime Asbestos Actions constituted a "willful" violation of the automatic stay under § 362(h) and awarded LTV $7600 in compensatory damages. LTV's request for contempt sanctions pursuant to § 105(a) and Bankruptcy Rule 9020 was "held in abeyance." (Order at 8)

MALC appealed to the District Court from both the injunction and the damage award under § 362(h). However, the appeal relating to the propriety of the injunction was withdrawn by stipulation. The damage award was affirmed on March 17, 1990 by the District Court in an opinion and order published at 112 B.R. 526.

MALC then appealed to this Court on four grounds: (1) that the factual findings of the Bankruptcy Court were clearly erroneous; (2) that such facts did not warrant the conclusion that MALC committed a "willful" violation of the automatic stay; (3) that an award of compensatory damages was improper in the absence of injury or evidence of actual damages; and (4) that an award of damages to a corporation was improper. MALC has conceded the first three issues. The sole question on appeal before us is whether § 362(h) allows recovery of damages by corporate debtors.

## II.

Section 362(h) of the code provides:

"An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

The only question is whether the word "individual" used in that section includes a corporation.

The principles of construction applicable to interpreting a complex statute such as the code, are straightforward:

[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute.

. . . .

The plain meaning of legislation should be conclusive, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." In such cases, the intention of the drafters, rather than the strict language, controls.

*United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)) (brackets in original).

Although the code does not define "individual," it does define "person" in § 101(35) to include "individual, partnership, and corporation...." Throughout the code, rights and duties are allocated in some instances to "individuals" and in others to "persons." Section 109, *"Who may be a debtor,"* uses "person" in certain situations and "individual" in others. Chapter 13 of the code is available only to an "individual with regular income ... or an individual with regular income and such individual's spouse...." 11 U.S.C. § 109(e). The text of other code sections demonstrates that Congress used the word "individual" rather than "person" to mean a natural person. To cite but one additional example, § 101(39) defines "relative" as an "individual related by affinity or consanguinity within the third degree as determined by the common law, or individual in

a step or adoptive relationship within such third degree." Plainly, the statute here is referring only to human beings; corporations and other legal entities can have no such "affinity or consanguinity" or "step ... relationship" except in the metaphoric sense, and can in no sense have an "adoptive relationship."

We have not located any legislative history to suggest that § 362(h) was meant to apply to "persons," rather than being confined to "individuals." The section was added as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333, 352, *1984 U.S.Code Cong. & Admin.News* (98 Stat) 333, 352 (1984). There is no published legislative history suggesting the possibility of a drafting error or other inadvertence. Appellee conceded during oral argument that there is no legislative history showing that the section was meant to apply to "persons." Therefore, this is not one of those "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *Ron Pair Enterprises, Inc.*, 109 S.Ct. at 1031 (brackets in original).

### III.

Although the plain meaning of "individual" in § 362(h) and basic rules of statutory construction would appear to prevent application of the section to benefit corporate debtors, such as LTV, there is substantial authority permitting just such application and awarding damages to corporate debtors, including decisions in the only other two circuit courts to address the issue. *In re Atlantic Business and Community Corp.*, 901 F.2d 325 (3d Cir.1990); *Budget Service Co. v. Better Homes of Va., Inc.*, 804 F.2d 289 (4th Cir.1986). Decisions in a few lower courts support MALC's position. *See, e.g., In re First RepublicBank Corp.*, 113 B.R. 277 (Bankr.N.D.Tex.1989); *In re Brilliant Glass, Inc.*, 99 B.R. 16 (Bankr.C.D.Cal.1988). *See also* 2 *Collier On Bankruptcy*, ¶ 362.12, at 362–79 (L. King 15th ed. 1990) ("The reasons for this statutory addition have not been stated and hence the reasons for limiting its benefits to individuals and for making the recovery mandatory are not entirely clear.") (footnote omitted).

The leading case applying § 362(h) to benefit corporate debtors is *Better Homes of Va., Inc.*, 804 F.2d 289 (4th Cir.1986) where the court analyzed the issue as follows:

> [Section] 362(h) must be read in conjunction with the rest of § 362 ... [so] that its sanctions are not limited to the relief of an "individual" in the literal sense. The Bankruptcy Code does not define the word individual.... [I]t seems unlikely that Congress meant to give a remedy only to individual debtors against those who willfully violate the automatic stay provisions of the Code as opposed to debtors which are corporations or other like entities. Such a narrow construction of the term would defeat much of the purpose of the section, and we construe the word "individual" to include a corporate debtor.

*Id.* at 292.

The approach of *Better Homes* has been followed by the Third Circuit, *see In re Atlantic Business and Community Corp.*, 901 F.2d 325 (3d Cir.1990), and several bankruptcy courts, *see, e.g., In re Mallard Pond Partners*, 113 B.R. 420, 423 (Bankr. W.D.Tenn.1990); *In re Schewe*, 94 B.R. 938, 948 (Bankr.W.D.Mich.1989); *In re Tel–A–Communications Consultants, Inc.*, 50 B.R. 250, 254 (Bankr.D.Conn.1985).

Essentially, all the courts which apply § 362(h) to corporate debtors advance the same argument relied on in *Better Homes:* Because the automatic stay under § 362(a) applies to all debtors, it is unlikely that Congress meant in § 362(h) to award damages for violating the stay only to individual debtors. Those courts point either to legislative history supporting the breadth of the stay, *see In re Tel–A–Communications Consultants*, 50 B.R. at 254, or to the breadth of the statutory stay itself, to support the conclusion that sanctions for violating the stay should be equally broad. We believe such analysis is precluded by the rules of construction set forth in *Ron Pair Enterprises Inc.*, discussed *supra.* However, even applying this analysis sim-

ply on its own terms, it ignores that subsection (h) of § 362 was added to the code after the rest of the section was enacted. As noted above, subsection (h) was included as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333, 352 (1984). The rest of § 362 had been enacted in 1978. Therefore, legislative history and construction which support broad coverage for the automatic stay imposed by § 362(a) do not necessarily apply to subsection (h), which deals only with sanctions for violating that stay. Notably, § 362(h) was included as part of Title III, Subtitle A, Sec. 304 of Public Law 98–353, entitled "Consumer Credit Amendments," which contains numerous additions to the code relating only to "individuals." *1984 U.S.Code Cong. & Admin.News* (98 Stat.) 352. The inclusion of § 362(h) within this subtitle makes it entirely plausible that the use of the word "individual" was intentional, and that Congress was enacting a series of measures meant to benefit only natural persons.

Furthermore, a reading of § 362(h) in conformity with its plain meaning is not illogical, or inconsistent either with the automatic stay provisions of § 362(a) or with the rest of the code. After Congress in 1978 passed the automatic stay provisions of § 362 along with the rest of the code, including § 105(a) which allowed a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," it is entirely possible that Congress then chose to expand the remedies for violations one step at a time. Congress may well have thought that individual debtors were particularly vulnerable to violations of the stay by debt-collection agencies and others who may be tempted to believe that individuals are less likely than corporations to be aware of their rights under the automatic stay. Congress may have concluded that this consideration, as well as others, warranted an explicit code provision to punish

stay violations and compensate debtors, in addition to civil contempt, when the debtors are individuals. Section 362(h) expands upon the discretionary nature of contempt proceedings by stating not only that "individual[s] ... *shall* recover actual damages," but also that "in appropriate circumstances, [individuals] may recover punitive damages." (emphasis added) Absent legislative history to explain the statute, there is at least reasonable conjecture to support a reading consistent with the plain meaning of the statute, and thereby to confirm our view that we should not go beyond that meaning.

## IV.

In *Crysen/Montenay*, we noted that

Prior to the enactment in 1984 of subsection (h) [of section 362], sanctions against willful violations of automatic stays were imposed pursuant to the authority of bankruptcy courts to order parties in contempt. Accordingly, the standard that governed the imposition of sanctions was that which governed contempt proceedings: a party generally would not have sanctions imposed for its violation of an automatic stay as long as it had acted without maliciousness and had a good faith argument and belief that its actions did not violate the stay.

902 F.2d at 1104 (citation omitted).

In *Crysen/Montenay*, we held that the remedial purpose of § 362(h) warranted a standard that made it easier to impose sanctions pursuant to that subsection than pursuant to contempt proceedings,[1] *id.*, but we declined to apply such a standard there because the case was one of first impression in this Circuit. *Id.* at 1105. As set forth above, we also explicitly left open the question of whether § 362(h) applies at all to corporate debtors. *Id.*

▮▮▮ We now hold that a bankruptcy court may impose sanctions pursuant to § 362(h), under the standard set out in *Crysen/Montenay*, only for violating a

---

1. "[A]ny deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages. An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages...." 902 F.2d at 1105.

stay as to debtors who are natural persons. For other debtors, contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay. *See id.* at 1104 (contempt involves maliciousness or lack of a good faith argument and belief that the party's actions were not in violation of a bankruptcy stay); *Fidelity Mortg. Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 51, 57 (2d Cir.1976) (allowing imposition of costs, including reasonable attorney's fees under civil contempt powers for acts which bankruptcy judge found were done with "knowledge" of automatic stay and "deliberate[ ]" disregard of bankruptcy rules regarding requirements for relief), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *Drywall Tapers, Local 1974 v. Local 530*, 889 F.2d 389, 394–95 (2d Cir.1989) (knowledge of violation and terms of injunction required to hold party in civil contempt), *cert. denied*, —— U.S. ——, 110 S.Ct. 1478, 108 L.Ed.2d 615 (1990); *see also In re First RepublicBank Corp.*, 113 B.R. at 279 (recognizing power of bankruptcy court under § 105 of the code and Bankruptcy Rule 9020 to impose contempt sanctions for violations of automatic stay); *In re Brilliant Glass, Inc.*, 99 B.R. at 18 (finding contempt an appropriate remedy for violation of the automatic stay where § 362(h) by its words only benefits individual debtors).

The purposes of the code indeed might benefit from a lenient standard for punishing violations of the automatic stay and compensating for resulting damages, as regards all debtors, individuals and corporations or other artificial entities, by "encourag[ing] would-be violators to obtain declaratory judgments before seeking to vindicate their interests ..., and thereby protect[ing] debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations." *Crysen/Montenay*, 902 F.2d at 1105. But improving legislation by amending it is not our function; only Congress can rewrite the statute. *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 376, 106 S.Ct. 1890, 1902, 90 L.Ed.2d 369 (1986). In the face of the statute's plain meaning and without evidence of a contrary legislative

intention, even if we thought § 362(h) would better serve the code's purposes by being applied to all debtors, we could do no more than invite Congress to change the result. *See Corwin Consultants, Inc. v. Interpublic Group of Cos.*, 512 F.2d 605, 611 (2d Cir.1975).

The orders below are reversed to the extent they awarded compensatory damages under § 362(h), and the case is remanded for further proceedings consistent with this opinion.