**In re David GOODMAN, d/b/a S.F.D. Imports, Sendo Stores, Brass Discount, Debtor.**

**JOHNSTON ENVIRONMENTAL CORPORATION, Successor to International Packaging Corporation, Plaintiff–Appellee–Cross–Appellant,**

**v.**

**James E. KNIGHT; John A. Knight; Mary Katherine Knight, Individually, and Trustees of the Katherine McClellan Knight Revocable Trust UTA June 2, 1987, Defendants–Appellants–Cross–Appellees.**

**In re David GOODMAN, d/b/a S.F.D. Imports, Sendo Stores, Brass Discount, Debtor.**

**JOHNSTON ENVIRONMENTAL CORPORATION, Successor to International Packaging Corporation; Santa Ana Properties; David Goodman, Plaintiffs–Appellees,**

**v.**

**James E. KNIGHT; John A. Knight; Mary Katherine Knight, Individually, and Trustees of the Katherine McClellan Knight Revocable Trust UTA June 2, 1987, Defendants–Appellants.**

Nos. 91–55456, 91–55571 and 91–55458.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted August 18, 1992.

Decided April 23, 1993.

William G. Malcolm, Malcolm, Cisneros & Houser, Irvine, CA, Gerard R. Kilroy, Howard, Kulik & Chizever, Los Angeles, CA, William A. Francis, Glendale, CA, for plaintiffs-appellees-cross-defendants-appellants.

Peter M. Appleton, Tyre, Kamins, Katz & Granof, Los Angeles, CA, for defendants-appellants-cross-plaintiffs-appellees.

Before: NORRIS, REINHARDT, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

## OVERVIEW

James A. Knight, John A. Knight, and Mary Katherine Knight (collectively "the Knights") own commercial rental property ("the Property") in Santa Ana, California. David Goodman, a Chapter 11 debtor in bankruptcy as of September 1, 1988 ("the Debtor"), was a subordinate sub-sublessee of a portion of the Property. The Debtor acquired this leasehold interest from International Packaging Corporation ("IPC"), the predecessor in interest to Johnston Environmental Corporation ("Johnston"). Because the Debtor's use of the Property violated various provisions of the Santa Ana Municipal Code, the City of Santa Ana threatened the Knights on January 24, 1989, with criminal prosecution. The Knights eventually responded by sending Notices to Quit to all lessees and by filing an unlawful detainer action in Santa Ana Municipal Court against all intermediate lessees, but not the Debtor. Prior to so doing, the Knights by their own admission had been notified by letter of Goodman's pending bankruptcy. The bankruptcy court made a finding of fact that the Knights and their attorney of record were put on notice as of January 19, 1990 that the debtor had filed a petition in bankruptcy. It is also noteworthy that the lease from the Knights' standpoint was economically disadvantageous.

In an attempt to accommodate the automatic stay provisions of 11 U.S.C. § 362, the Knights on February 26, 1990, filed a unilateral "Stipulation" in bankruptcy court in which they tried to exempt the Debtor from the result of their unlawful detainer action in State court. The bankruptcy court rejected the stipulation, however, and determined the Knights had violated the automatic stay provisions of 11 U.S.C. § 362(h) (1988). The bankruptcy court further concluded, however, that the violation was not willful. Accordingly, the Debtor's request for costs and sanctions was denied. The bankruptcy court permanently enjoined the Knights from pursuing the unlawful detainer action.

The Knights then appealed to the district court. The district court upheld the permanent injunction, but reversed the bankruptcy's court's holding that the violations were not willful. The district court remanded the action to the bankruptcy court to determine the amount of damages resulting from the Knights' violation of the automatic stay. The district court's remand order noted that the bankruptcy court should consider the undecided issue of whether a corporation, i.e. Johnston, has standing to obtain damages for a violation of the automatic stay.

The Knights appeal the permanent injunction. The Knights also appeal the district court's holdings that they (1) violated the automatic stay, and (2) were liable for damages flowing therefrom. The Knights claim *inter alia* that the disputed subordinate sublease was not property of the Debtor's estate. Johnston appeals the district court's remand to the bankruptcy court to determine whether a corporation has standing to recover damages for a violation of the automatic stay. We have

jurisdiction of these three consolidated timely appeals pursuant to 28 U.S.C. § 158(d). We conclude the following: (1) The bankruptcy court did not abuse its discretion in refusing to accept the Knights' offer to stipulate that the Debtor's interest in the subordinate sublease would be protected notwithstanding the results of proceedings in State court; (2) the Knights' action to cancel the master lease was a core proceeding; and (3) the disputed subordinate sublease was property of the Debtor's estate. As a result, we agree with the district court that the bankruptcy court's issuance of a permanent injunction against the Knights "from taking any further action on the Notices and/or the Complaint for Unlawful Detainer, except to dismiss it" was proper and within the power of the issuing court. We also find that the Knights willfully violated the automatic stay, but that because the term "individual" in 11 U.S.C. § 362(h) does not include a corporation, the bankruptcy court did not err in refusing to award sanctions. Thus, we affirm the district court in part, reverse the district court in part, and remand for appropriate proceedings consistent with this opinion.

## I

■ The Knights belatedly attempted to protect the Debtor from the effects of their action in State court by filing a unilateral "Stipulation." Counsel for the Knights gave as his reason for tendering the stipulation his "experience with Bankruptcy Court," i.e., "when someone comes in and wants relief from a stay where it does apply, that you get held up for six months or nine months or whatever in litigating the issues...." The stipulation was spurned by the Knights' opponents and rejected by the bankruptcy court. An examination of the record indicates the bankruptcy court did not abuse its discretion in so doing. The bankruptcy court specifically concluded, "the balance of hardships tips strongly in favor of the Debtor, IPC and Santa Ana Properties. That is, should the Defendants [Knights] be allowed to proceed with their Complaint and terminate the leases then the Debtor's plan of reorga-

nization will be detrimentally affected and the leasehold interests in the Property, which I find are unique, may be lost." In other words, there is no way of ascertaining how a state court might handle such a unilateral stipulation, and therefore the stipulation might not accomplish its intended purpose. As the bankruptcy court observed, "If [the Knights] terminate the lease, all leases below it fall...." We conclude that the bankruptcy court's handling of this issue fell within the range of its discretion. The Knights could have, and should have, pursued the orthodox remedy: relief from the automatic stay.

## II

### A.

■ The Knights argue to the effect that the adversary action was not a "core" proceeding but was, at most, a "related" proceeding, and thus the bankruptcy court lacked jurisdiction to resolve the dispute and enter a final order. The Knights assert the dispute should have been resolved in state court as a landlord-tenant issue. Johnston argues the bankruptcy court correctly processed the proceeding to enjoin the Knights as a core proceeding, thus the bankruptcy court had jurisdiction to enter an injunction.

Bankruptcy judges have authority to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 ... and may enter appropriate orders and judgments...." 28 U.S.C. § 157(b)(1) (1988). A non-exhaustive list of examples of core proceedings is set forth in § 157(b)(2) and includes matters involving the administration of the bankruptcy estate, motions to terminate, annul, or modify the automatic stay, and proceedings that affect assets of the bankruptcy estate. *Id.* § 157(b)(2)(A), (G), (O). This court has recently noted that

"Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11.... The meaning of 'arising in' proceedings is less clear, but seems to be

a reference to those 'administrative' matters that arise *only* in bankruptcy cases. In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."

*Eastport Assoc. v. Los Angeles (In re Eastport Assoc.)*, 935 F.2d 1071, 1076 (9th Cir.1991) (quoting *In re Wood*, 825 F.2d 90, 96–97 (5th Cir.1987) (footnotes omitted)).

■■■ A proceeding is not removed from the jurisdiction of the bankruptcy court solely because the resolution may be affected by state law. 28 U.S.C. § 157(b)(3). If a claim is not listed explicitly in § 157(b)(2) as a "core proceeding[ ]," we "consider[ ] factors such as whether the rights involved exist independent of title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case." *Taxel v. Electronic Sports Research (In re Cinematronics, Inc.)*, 916 F.2d 1444, 1450 n. 5 (9th Cir.1990). Determinations regarding the nature and extent of the bankruptcy estate are fundamental functions of the bankruptcy court and would be "core proceedings." *John Hancock Mutual Life Ins. Co. v. Watson (In re Kincaid)*, 917 F.2d 1162, 1165 (9th Cir.1990).

We conclude that these bankruptcy proceedings were "core proceedings" falling within the jurisdiction of the bankruptcy court. The adversary proceeding involved: (1) allegations that the automatic stay was violated, a claim that is entirely dependent upon bankruptcy law for definition; (2) a request to enjoin the Knights from prosecuting their unlawful detainer action which, if it were not for the bankruptcy proceeding, the Knights would be entirely within their rights to pursue in state court; (3) assertions that the Debtor's lease was not property of the estate, a claim that would impact the bankruptcy court's ability to administer the Debtor's estate and approve actions that would impact the subordinate sublease; (4) a state contract claim, the disposition of which would ultimately affect the Debtor's possession of property

necessary for a successful reorganization under the bankruptcy provisions; and (5) a request for damages under 11 U.S.C. § 362(h), a cause of action created solely by Title 11.

The entire basis of Johnston's claim revolved around bankruptcy provisions and the Debtor's bankruptcy case, and did not exist independently of Title 11. The adversary proceeding had both "arising under" and "arising in" elements. The claims did not depend on state law for resolution and were significantly affected by the filing of the bankruptcy case. The claims presented would be entirely inappropriate for resolution in any court other than a bankruptcy court. The adversary proceeding was thus properly characterized by the bankruptcy court as a "core proceeding."

It follows from this conclusion that the bankruptcy court had the authority to enter findings of fact and conclusions of law and to render final orders and judgments. The bankruptcy court was not required merely to submit proposed findings and conclusions to the district court, and thus did not err in resolving the case and entering the appropriate orders without consent of the parties.

**B.**

■■ As to the specific injunction restraining the Knights from pursuing their unlawful detainer action except to dismiss it, we conclude that the injunction is adequately supported by the record and the law. In that respect, we affirm the bankruptcy court's conclusion that the Knights violated the automatic stay provisions of the Code. In so doing, we have considered and found wanting the Knights' argument that "unless Goodman assumed it, the [subordinate] sublease [with IPC] was rejected as a matter of law 60 days after September 1, 1988, and [therefore] it was not property of the estate when the Knights acted." If it was not property of the estate, goes the argument, there could be no violation of the automatic stay.

In that connection, Goodman did file on October 31, 1988, a Petition for Leave to Assume Executory Contract and Extension

of Time to Assume Lease and a Notice of Motion to Assume Executory Contract. This petition asked the bankruptcy court for permission to assume the disputed subordinate sublease with IPC. These documents were served on Santa Ana Properties, but not the Knights. On November 28, 1988, the bankruptcy court entered an order authorizing the requested assumption, and it appears that IPC both before and thereafter honored the lease by accepting and cashing checks for rent from the Debtor.

■ Goodman was not obligated to serve the Knights with the petition to assume. The Knights' long-term lease to Santa Ana Properties would have been unaffected whether or not the Debtor successfully assumed the subordinate sublease. Santa Ana Properties was responsible to the Knights for maintaining the property and insuring the lease provisions were complied with. This is amply demonstrated by the Knights' reaction to receiving notification from the City of Santa Ana of violations of the municipal code: the Knights did not directly contact IPC or the Debtor, but notified Santa Ana Properties with a demand that the violations be cured. Thus, there was no substantive reason to serve the Knights, and we find their claim in this regard to be without merit. The subordinate sublease was part of the estate.

### III

#### A.

■ The Knights next contend the district court erred in reversing the bankruptcy court's denial of sanctions on the ground that the violations of the stay were not willful. The Ninth Circuit has set forth the following standard to determine if a party willfully violated a stay pursuant to 11 U.S.C. § 362(h):

"A 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for

damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded."

*Tsafaroff v. Taylor (In re Taylor)*, 884 F.2d 478, 482 (9th Cir.1989) (quoting *In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989)) (emphasis omitted).

Johnston correctly points out the Knights were aware of the Debtor's bankruptcy petition as well as the automatic stay. IPC's attorney sent the Knights a letter indicating IPC could take no immediate action to cure the code violations because the Debtor had filed a bankruptcy petition and the automatic stay would have to be lifted before IPC could proceed. Notwithstanding this explicit admonition, the Knights thereafter served the Notices and then filed the unlawful detainer complaint seeking to recover possession of the Property. The reason given by the Knights' counsel for his chosen course of action— bankruptcy court is slow—does not help them escape the conclusion that their actions were willful. Although the Knights may not have had the specific intent to violate the automatic stay, the Knights knew of the automatic stay and their actions were intentional, thus satisfying the definition of a "willful" violation of the automatic stay. *See Bloom*, 875 F.2d at 227 (holding knowledge of the bankruptcy petition and action taken thereafter was sufficient to find a "willful" violation of the stay). The district court was correct in reversing the bankruptcy court's holding that the violation was not "willful."

#### B.

■ Normally pre-petition creditors in Johnston's position shall recover damages under 11 U.S.C. §§ 362(h) and 1109(b) for willful violations of the automatic stay.[1]

---

1. Section 1109(b) provides:
 A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

Johnston, however, is a corporate entity. The Knights argue that as such, it is not entitled to damages under 11 U.S.C. § 362(h) because that statute specifically refers only to an *"individual* injured by any willful violation" as eligible to recover damages. The statute does not speak in terms of corporations or other business entities or of "persons" as defined in 1 U.S.C. § 1 (1988), the Dictionary Act.

This is a question of first impression in this circuit. Two of the three circuits that have considered it have concluded "individual" in § 362(h) encompasses corporate entities as well as natural persons. *See Cuffee v. Atlantic Business and Community Dev. Corp. (In re Atlantic Business and Community Corp.),* 901 F.2d 325, 329 (3d Cir.1990) ("Although Section 362(h) refers to an individual, the section has uniformly been held to be applicable to a corporate debtor."); *Budget Service Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289, 292 (4th Cir.1986) ("[W]e construe the word 'individual' to include a corporate debtor."). Applying principles of statutory construction enunciated in *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), however, the Second Circuit has concluded "individual" does not include a corporate debtor. *Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.),* 920 F.2d 183, 184–87 (2d Cir.1990). Lower courts are likewise split. *Compare, e.g., Mallard Pond Partners v. Commercial Bank & Trust Co. (In re Mallard Pond Partners),* 113 B.R. 420, 423 (Bankr. W.D.Tenn.1990) ("[T]he word 'individual' is construed to include a partnership (or corporate) debtor."); *Schewe v. Fairview Estates (In re Schewe),* 94 B.R. 938, 948 (Bankr.W.D.Mich.1989) ("An 'individual' as set forth in § 362(h) may include a corporate entity."); *Tel–A–Communications Consultants, Inc. v. Auto–Use (In re Tel–A–Communications Consultants, Inc.),* 50 B.R. 250, 254 (Bankr.D.Conn.1985) (holding § 362(h) should be construed more broadly than its literal language and should be read in conjunction with all of § 362)

11 U.S.C. § 1109(b) (1988). Thus, Johnston has

*with In re MCEG Productions, Inc.,* 133 B.R. 232, 236 (Bankr.C.D.Cal.1991) ("Although 'individual' is not a defined term in the Code, Congress' use of the term can leave no doubt that it is limited to a natural person."); *In re Prairie Truck Ry.,* 125 B.R. 217, 220 (Bankr.N.D.Ill.1991) ("[O]nly natural persons can recover damages as individuals under section 362(h)."); *First RepublicBank Corp. v. NCNB Texas Nat'l Bank (In re First RepublicBank Corp.,* 113 B.R. 277, 279 (Bankr.N.D.Tex.1989)) (holding a corporation cannot recover damages under § 362(h)).

We conclude that the Second Circuit's determination in *Chateaugay* is correct: "individual" means individual, and not a corporation or other artificial entity. The Fourth and Third Circuit's analysis is inconsistent with the principles of statutory construction set forth by the Supreme Court in *Ron Pair. Chateaugay, Prairie Truck,* and *MCEG Productions* set forth a persuasive analysis of the issue, which is consistent with *Ron Pair.* The Second Circuit's reasoning, which we adopt, is as follows:

> We have not located any legislative history to suggest that § 362(h) was meant to apply to "persons," rather than being confined to "individuals." The section was added as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333, 352, *1984 U.S.Code Cong. & Admin.News* (98 Stat) 333, 352 (1984). There is no published legislative history suggesting the possibility of a drafting error or other inadvertence. Appellee conceded during oral argument that there is no legislative history showing that the section was meant to apply to "persons." Therefore, this is not one of those "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *Ron Pair Enterprises, Inc.,* 489 U.S. at 242, 109 S.Ct. at 1031 (brackets in original).

*In re Chateaugay Corp.,* 920 F.2d at 185; *cf. Rowland v. California Men's Colony,*

standing to press this issue.

— U.S. ——, ——, 113 S.Ct. 716, 726, 121 L.Ed.2d 656 (1993) (holding the word "individuals" is not the equivalent of the Dictionary Act's use of the word "persons"). Moreover, there is a plausible explanation for why Congress could have intended this result. As pointed out in *Chateaugay*, Congress enacted § 362(h) as one of several "Consumer Credit Amendments," apparently meant to protect natural, or individual, debtors. This category of debtors is "less likely than corporations to be aware of their rights under the automatic stay." *See* 920 F.2d at 186.

### C.

 Our conclusion that Johnston may not recover damages under § 362(h), however, does not end our inquiry. *Chateaugay* acknowledges the capacity of an injured corporation to recover damages caused by a violation of the automatic stay under a different theory: ordinary civil contempt:

> For other debtors [who are not "individuals"], contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay. *See [In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1104 (2d Cir.1990)]* (contempt involves maliciousness or lack of a good faith argument and belief that the party's actions were not in violation of a bankruptcy stay); *Fidelity Mortg. Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 51, 57 (2d Cir.1976) (allowing imposition of costs, including reasonable attorney's fees under civil contempt powers for acts which bankruptcy judge found were done with "knowledge" of automatic stay and "deliberate[ ]" disregard of bankruptcy rules regarding requirements for relief), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *Drywall Tapers, Local 1974 v. Local 530*, 889 F.2d 389, 394–95 (2d Cir.1989) (knowledge of violation and terms of injunction required to hold party in civil contempt), *cert. denied*, [494] U.S. [1030], 110 S.Ct. 1478, 108 L.Ed.2d 615 (1990); *see also In re First RepublicBank Corp.*, 113 B.R. at 279 (recognizing power of bankruptcy court

under § 105 of the code and Bankruptcy Rule 9020 to impose contempt sanctions for violations of automatic stay); *In re Brilliant Glass, Inc.*, 99 B.R. [16] at 18 [ (Bankr.C.D.Cal.1988) ] (finding contempt an appropriate remedy for violation of the automatic stay where § 362(h) by its words only benefits individual debtors).

> The purposes of the code indeed might benefit from a lenient standard for punishing violations of the automatic stay and compensating for resulting damages, as regards all debtors, individuals and corporations or other artificial entities, by "encourag[ing] would-be violators to obtain declaratory judgments before seeking to vindicate their interests ...", and thereby protect[ing] debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations." *Crysten/Monetenay*, 902 F.2d at 1105.

*In re Chateaugay Corp.*, 920 F.2d at 187. We adopt this reasoning.

 The primary difference between proceeding on the basis of the language of § 362(h) on one hand, and civil contempt on the other, is the mandatory nature of an award of damages as to the former compared to the permissive nature of such an award under the latter. Pursuant to § 362(h), an individual injured "shall" recover damages; pursuant to civil contempt, whether damages shall be awarded is discretionary. This distinction makes a difference in this case because the bankruptcy court in deciding not to award damages observed that in its view, the violation was "not [sufficiently] egregious" to justify damages. This leaves no doubt whatsoever as to what the bankruptcy court would do on remand. It would exercise its discretion to do what it has already done: deny damages. On this record, we cannot say that such a denial would be an abuse of discretion. The bankruptcy court was fully aware of the Knights' motivation, including their interest in escaping from a disadvantageous lease. On the other hand, the Knights were being pressed by the City of Santa Ana because of a recalcitrant debtor. Given the deference due a bankruptcy

court in these matters, and in the interest of hastening the conclusion of this lengthy litigation, we affirm its denial of sanctions.

## CONCLUSION

The district court's remand order of March 5, 1991 to determine costs and fees is REVERSED. The order of the bankruptcy court and the order of the district court turning aside the Knights' appeal from the bankruptcy court's decision are AFFIRMED, and the matter is REMANDED to the district court for further proceedings consistent with this opinion.

The parties shall bear their own costs of this appeal.