In re A & J Auto Sales                    CV-97-294-SD   04/30/98 P

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


In re:  A & J Auto Sales, Inc.,
 d/b/a Wise Auto Sales,
                    Debtor

A & J Auto Sales, Inc., d/b/a
 Wise Auto Sales

           v.                                Civil No. 97-294-SD

United States of America


                         O R D E R

     In this bankruptcy appeal, appellant A & J Auto Sales, Inc.,
d/b/a Wise Auto Sales (A & J), seeks review of the bankruptcy
court's order finding that the Internal Revenue Service (IRS)
willfully violated the automatic stay, but declining to award
damages for civil contempt under 11 U.S.C. § 105.  The IRS cross-
appeals, arguing that the bankruptcy court erred by finding the
IRS willfully violated the automatic stay.  This appeal raises
three issues of unsettled law; i.e., the proper standard for
determining whether a violation of the automatic stay is willful,
whether corporations can recover damages pursuant to 11 U.S.C. §
362(h), and whether the court can award damages for a violation
of the automatic stay pursuant to 11 U.S.C. § 105.


                        Background

     A & J is a corporation engaged in the sale and service of
automobiles.  At 12:30 p.m. on September 13, 1995, IRS officers,

Susan Marston, Boyd Chivers and Jennifer Bouse, arrived at A & J's premises to conduct collection proceedings. Leo Jerzierski, the president of A & J, told the revenue officers that he was planning to file bankruptcy and that his son was currently on his way to Manchester to do so. Jerzierski's son filed the petition at 2:03 p.m.

Before the bankruptcy filing, the officers served a previously prepared Notice of Levy on the debtor, filled out a Notice of Seizure and also served it on the debtor, and tagged the debtor's vehicles with warning stickers. After completing these steps, one of the revenue officers called a towing company, which arrived within ten minutes.

While they were at the debtor's premises, two of the IRS officers spoke with the debtor's counsel, Charles Cleary, by phone. Cleary told them that they were violating the automatic stay and any removal of the cars would be a willful violation, which would subject the IRS to sanctions. The debtor's attorney requested that the officers contact Mae Lew of the IRS's Boston office to discuss the legality of their actions. The revenue officer responded that he would telephone his supervisor.

Later that afternoon, Cleary again spoke with an IRS officer, who informed him that the IRS was proceeding with its seizure. At trial Marston confirmed that the debtor's attorney informed her the IRS was violating the automatic stay. Marston told Cleary that she believed there was no violation of the automatic stay because the notices of levy and seizure had been

2

completed prepetition. Marston also spoke to Diane Puckhaber, another of debtor's attorneys, who requested that the officers contact Attorney Lew. Instead, Marston telephoned her manager, who called the IRS's Special Procedures Office in Portsmouth. Marston was informed that the revenue officers' actions were proper as long as the notices of levy and seizure were served prepetition.

The revenue agents continued removing the vehicles to a secure location. Approximately eight days later, the IRS returned the cars pursuant to the bankruptcy court's turnover order of September 20, 1995.

A & J subsequently filed a complaint against the IRS alleging that it had willfully violated the automatic stay provision, 11 U.S.C. § 362. The bankruptcy court held that although the IRS had willfully violated the automatic stay, A & J, as a corporate debtor, could not recover damages pursuant to 11 U.S.C. § 362(h), which allows an individual to collect damages when he or she is harmed by a willful violation of the automatic stay. The court stated that any damages would have to be grounded in the court's statutory contempt powers. The court, however, declined to award damages for contempt.

## Discussion

### 1. Standard of review

In considering a bankruptcy appeal, the district court applies a de novo standard when reviewing the bankruptcy court's

3

conclusions of law, but accepts the bankruptcy court's findings of fact unless clearly erroneous.  In re G.S.F. Corp., 938 F.2d 1467, 1474 (1st Cir. 1991); Robb v. Schindler, 142 B.R. 589, 590 (D. Mass. 1992).  The bankruptcy court's remedies are upheld unless they amount to an abuse of discretion.  See In re Gonic Realty Trust, 909 F.2d 624, 626 (1st Cir. 1990).

2. Violation of the Automatic Stay

The court must first determine whether the IRS violated the automatic stay at all.  The Bankruptcy Code provides that filing a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any action to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  The bankruptcy court found that "[t]he IRS's actions in removing the cars from the Debtor's premises and retaining them postpetition were actions 'to obtain possession of property of the estate or to exercise control over property of the estate.'"  A & J Auto Sales, Inc., v. United States (In re A & J Auto Sales), 210 B.R. 667, 670 (Bankr. D.N.H. 1997).  The IRS, however, argues that the seizure was completed prepetition when it served the debtor with notice of seizure and tagged the vehicles.  And "[t]he removal of vehicles from the lot after a valid prepetition seizure does not constitute a violation of the automatic stay."  Appellee's Brief on Cross-Appeal and Reply to Appellant's Brief on Appeal (Appellee's Brief) at 15.

4

As an initial matter, the court notes that the vehicles remained property of the bankruptcy estate even after the IRS seized them. See Appellee's Brief at 17. Property of the estate is defined broadly to include any property to which the estate has some right. See 11 U.S.C. § 541; United States v. Whiting Pools, Inc., 462 U.S. 198, 204 (1983) ("Congress intended a broad range of property to be included in the estate"). Thus the United States Supreme Court has held that a "reorganization estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization . . . ." Whiting Pools, supra, 462 U.S. at 209. "The creditor with a secured interest in property included in the estate must look to [the Bankruptcy Code] for protection, rather than to the nonbankruptcy remedy of possession." Id. at 204. "The Bankruptcy Code provides secured creditors various rights, including the rights to adequate protection, and these rights replace the protection afforded by possession." Id. at 207. Furthermore, "the [IRS]'s interest in seized property is its lien on that property." Id. at 210. Thus the debtor retains an interest in property that has been seized by the IRS, making it property of the estate.

Given that the vehicles were property of the estate, the question is whether the IRS violated the automatic stay by exercising control over property of the estate. In 1984 Congress amended the automatic stay, which previously prohibited obtaining possession of estate property, adding a prohibition on exercising

control over property of the estate.  Congress gave no indication of its intent, and courts have differed over the proper interpretation of this section.  See In re Young, 193 B.R. 620, 623 (Bankr. D.D.C. 1996).  The IRS argues that because it established constructive possession by tagging the vehicles before the debtor filed its bankruptcy petition, by towing the vehicles, it was merely maintaining control over the property, and thus was not "exercising control," as prohibited by the stay.  Even in cases where the creditor obtains actual possession prepetition, however, some courts have found that retaining control over the property violates the automatic stay.  See, e.g., California Employment Dev. Dep't v. Taxel (In re Del Mission Ltd.), 98 F.3d 1147, 1151 (9th Cir. 1996); Knaus v. Concordia Lumber Co. (In re Knaus), 889 F.2d 773, 775 (8th Cir. 1989).  These courts have reasoned that the fundamental protection provided by the automatic stay would be undermined if the burden was on the debtor to request turnover of estate property held by creditors.  See In re Colortran, Inc., 210 B.R. 823, 827 (Bankr. 9th Cir. 1997).  Thus, according to this line of cases, the duty to return property of the estate arises upon filing of the bankruptcy petition, and failure to do so violates the automatic stay.  See In re Knaus, supra, 889 F.2d at 775.

Other courts, however, have held that the passive retention of control over property seized prepetition does not violate the automatic stay.  See, e.g.,  Massey v. Chrysler Financial Corp. (In re Massey), 210 B.R. 693, 696 (Bankr. D. Md. 1997); In re

6

Young, supra, 193 B.R. at 624. These courts believe the burden is on the debtor to request return of the property pursuant to the Bankruptcy Code's turnover provision, and the creditor is justified in retaining possession until provided with adequate protection. See In re Young, supra, 193 B.R. at 624-25. Because the automatic stay's main purpose is to maintain the status quo, it does not require creditors to take affirmative acts, but rather prohibits them from disturbing the status quo. A contrary interpretation, according to some courts, would be too great a departure from previous practice, which allowed creditors to retain possession while the issue of adequate protection was resolved. Id. at 625.

In this case, the bankruptcy court appears to have endorsed the former approach by citing In re Del Mission, in which the Ninth Circuit held that retention of property violated the automatic stay. See A & J Auto Sales, supra, 210 B.R. at 670 (citing In re Del Mission, supra, 98 F.3d at 1151). Regardless of which approach is applied, however, the court finds that the IRS violated the automatic stay. The courts that hold maintaining possession of estate property postpetition is not a violation of the automatic stay focus on the fact that the stay is designed to maintain the status quo. Here, although the IRS may have had constructive possession of the cars, the debtor retained actual possession at the time the petition was filed. Thus, by removing the cars, the IRS disturbed the status quo.

7

## 3. Willfulness

There is a current split among the circuits over the proper standard for determining whether a violation of the stay was "willful."  Although the law regarding the appropriate standard for willfulness under section 362(h) is somewhat unsettled, most courts, including this court, have held that a violation of the automatic stay is willful when the creditor knew of the stay and violated the stay via an intentional act.  See Johnston Evtl. Corp. v. Knight (In re Goodman), 991 F.2d 613, 618 (9th Cir. 1993); Lansdale Family Restaurants, Inc. v. Weis Food Serv. (In re Lansdale Family Restaurants), 977 F.2d 826, 829 (3d Cir. 1992); Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.), 902 F.2d 1098, 1105 (2d Cir. 1990); Federal Home Loan Mortgage Corp. v. McCormack, 1996 WL 753938 *4 (D.N.H. 1996).  The IRS, however, argues that the court should abandon this standard in favor of a stricter standard requiring actual knowledge that the act in question violated the stay. See Appellee's Brief at 21.

The IRS's argument in favor of the stricter standard is based upon recent United States Supreme Court cases interpreting "willful" in different contexts.  See Appellee's Brief at 20-21. This court, however, believes that those cases are not sufficiently analogous to warrant abandoning the more inclusive standard.  The statutes at issue in the cases cited by the IRS differ dramatically from the automatic stay provision of the

8

Bankruptcy Code.* Id. (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 129-30 (1985); Ratzlaf v. United States, 510 U.S. 135, 149 (1994)). Indeed, one of those case involves a criminal statute. See Ratzlaf, 510 U.S. at 139. As this court has previously noted,

> "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy."

> The primary purposes of the automatic stay provisions are to effectively stop all creditor collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and her creditors, thereby affording the parties and the Court an opportunity to appropriately resolve competing economic interests in an orderly and effective way.

Federal Home Loan Mortgage Corp. v. McCormack, 1996 WL 753938 at *2-3 (citations omitted) (quoting Zeoli v. Riht Mortg. Corp., 148 B.R. 698, 699-700 (D.N.H. 1993) (quoting Notes of the Committee on the Judiciary, S. REP. No. 989, 95th Cong., 2d Sess. 54 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840)). The more liberal definition of "willful" bolsters the purposes of the automatic stay by "encourag[ing] would-be violators to obtain declaratory

---

*As the Court noted in one of the cases cited by the IRS, "'willful .. . is a 'word of many meanings' and 'its construction [is] often . . . influenced by its context.'" Ratzlaf, supra, 510 U.S. at 141 (quoting Spies v. United States, 317 U.S. 492, 497 (1943)).

9

judgments before seeking to vindicate their interests in violation of an automatic stay, and thereby protects the debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations." In re Crysen/Montenay Energy Co., supra, 902 F.2d at 1105.

Thus the court finds that the bankruptcy court did not err in finding the IRS's violation of the automatic stay willful.

4. Remedies

    a. Section 362(h)

A & J argues that the bankruptcy court erred by holding that section 362(h) does not allow a corporate debtor to recover damages caused by a willful violation of the automatic stay. The statute provides, "An individual injured by any willful violation of a stay provided by this section shall recover actual damages . . . ." 11 U.S.C. § 362(h). Subsection (h) was added to section 362 in 1984 with no legislative history. There is a split among the circuit courts over the scope of this provision. The Second, Ninth, and Eleventh Circuits have held that corporations cannot recover under this section. See Jove Eng'g Inc. v. IRS, 92 F.3d 1539, 1552 (11th Cir. 1996); Maritime Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.), 920 F.2d 183, 184-85 (2d Cir. 1990); In re Goodman, supra, 991 F.2d at 619. The Third and Fourth Circuits, however, have held that corporations can recover under section 362(h). See Cuffee v. Atlantic Business & Community Dev. Corp. (In re

Atlantic Business & Community Corp.), 901 F.2d 325, 329 (3d Cir. 1990); Budget Servs. Co. v. Better Homes of Va., Inc., 804 F.2d 289, 292 (4th Cir. 1986).

This court finds the reasoning of the courts prohibiting corporations from recovering under section 362(h) more compelling. In Chateaugay, the Second Circuit found that the plain meaning rule of statutory interpretation suggested that the term "individual" should not be read to include corporations. See In re Chateaugay Corp., supra, 920 F.2d at 184. Further, the court noted, "[a]lthough the code does not define 'individual,' it does define 'person' in § 101(35) to include 'individual, partnership, and corporation . . . .'" Throughout the code, rights and duties are allocated in some instances to 'individuals' and in others to 'persons.'" Id. Thus, the Second Circuit concluded, the plain meaning rule and the statutory scheme compelled the conclusion that corporations could not evoke section 362(h).

The Fourth Circuit, however, reached the contrary result by refusing to apply the plain meaning of the statute. See Budget Servs., supra, 804 F.2d at 292. The court reasoned that it seemed "unlikely that Congress meant to give a remedy only to individual debtors," since "[s]uch a narrow construction would defeat much of the purpose of the section . . . ." Id. This court, however, must reject such attempts to rewrite the statute. Courts "are bound by the language of the statute as written and . . . are not at liberty 'to rewrite [the] statute because [they]

11

might deem its effects susceptible of improvement.'"
Commissioner v. Lundy, 516 U.S. 235, 252 (1996) (quoting
Badaracco v. Commissioner, 464 U.S. 386, 398 (1983)).
"[I]mproving legislation by amending it is not our function; only
Congress can rewrite the statute."  In re Chateaugay, supra, 920
F.2d at 197.  Thus the court concludes that section 362(h), which
explicitly limits its application to individuals, cannot be used
by corporations.


     b. Section 105

     A & J argues that, even if it cannot recover damages under
section 362(h), it should have recovered damages pursuant to
section 105.  The IRS, on the other hand, contends that the
bankruptcy court lacks the power to order it to pay damages.
Section 105(a) provides that a court "may issue any order . . .
that is necessary or appropriate to carry out the provisions of
this title."  11 U.S.C. § 105(a).  Most courts have held that
this section provides bankruptcy courts with civil contempt
powers.  Some courts have evoked the contempt power to award
damages to corporations, who cannot recover damages under section
362(h), for violations of the automatic stay.  See In re Del
Mission Ltd., supra, 98 F.3d at 1152; Jove Eng'g, supra, 92 F.3d
at 1553; In re Chateaugay, supra, 920 F.2d at 186-87.  This
holding is supported by the fact that the automatic stay
functions essentially like an injunction, and courts must have
the power to sanction violations of the stay.  "The so-called

12

'automatic stay' simply codified Rules that were adopted in 1973 to `[obviate] the necessity for the bankrupt to affirmatively seek relief by an application showing that the stay sought is within the reach of Section 11a of the [Bankruptcy] Act [of 1898],' and to `[dispense] with the formality of the trustee's obtaining a restraining order through application to the court.' Neither those Rules nor their codification as 11 U.S.C. § 362(a) alters the nature or character of the stay as an injunction protecting the jurisdiction and integrity of this Court and its processes." In re Westefield, 172 B.R. 178, 179 (Bankr. W.D.N.Y. 1994) (footnotes omitted) (quoting COLLIER ON BANKRUPTCY ¶¶ 401.3, 601 (14th ed.)). Furthermore, holding that section 105 allows courts to award damages does not, as the IRS suggests, constitute an end run around Congress. The addition of section 362(h) to the automatic stay made the award of damages to individuals injured by a stay violation mandatory. This is not inconsistent with the existence of discretionary power to sanction other stay violations. Indeed, given the fact that many courts had been sanctioning violations of the automatic stay before 1984, it seems more probable that Congress would have explicitly prohibited such awards if that had been its intent.

Although the court believes that the bankruptcy court's contempt power allows it to award damages for violations of the stay, this power is discretionary. Thus, the bankruptcy court's decision not to award sanctions is only reviewed for an abuse of discretion. The bankruptcy judge determined that damages were

13

inappropriate because the IRS had violated the stay in good faith and the debtor failed to present evidence of actual damages suffered as a result of the violation.  The court sees nothing to suggest an abuse of discretion.

## Conclusion

For the abovementioned reasons, the bankruptcy court's decision is hereby affirmed.

SO ORDERED.

 

_____
Shane Devine, Senior Judge
United States District Court

April 30, 1998

cc:    Diane M. Puckhaber, Esq.
       Beth A. Westerman, Esq.
       Victor Dahar, Esq.
       Paul M. Gagnon, Esq.
       George Vannah, Clerk, US Bankr Ct